Harrison v. Walden.

GEORGE B. HARRISON et al., Respondents, v. JAMES R. WALDEN et al., Appellants.

**Kansas City Court of Appeals, May 6, 1901.**

1. **Bills and Notes: DECEIT: SALES: PUFFING: FARM RECORD.** On the evidence in this case, it is *held* that the defendants were on an equal footing with the payee in the notes in suit in relation to the transactions and negotiations out of which said notes grew; and that such payee's puffing of the value and selling qualities of the Farm Record book was but a mere expression of opinion, and the fact that defendants lent too willing ears to such puffing did not make the notes fraudulent in their inception.

2. ———: ———: ———: ———: INDORSEE'S KNOWLEDGE. On the evidence, *held,* that the indorsee of the notes in suit knew just as much about the Farm Record book and its prospects as the defendants, and the courts are not required to protect the defendants from their own folly and cupidity; and fraudulent representations to afford a ground of relief must be of facts which then exist or had existed and not an opinion, a promise or an assured fact.

Appeal from Howard Circuit Court.—*Hon. John A. Hockaday,* Judge.

Affirmed.

*O. S. Barton, John Cosgrove* and *James W. Cosgrove* for appellants.

(1) The demurrer to defendant's evidence admitted all the facts disclosed thereby and every reasonable inference in favor of such facts.    Sewer Pipe Co. v. Smith, 36 Mo. App. 619, and cases cited; Harris v. Railroad, 89 Mo. 233; Buckley

v. Kansas City, 156 Mo. 16; Dorsey v. Railroad, 83 Mo. App. 542. (2) There was substantial evidence tending to show that the notes were procured fraudulently and without consideration, and that plaintiffs purchased with notice thereof. Gooch v. Hollan, 30 Mo. App. 450; De Graw v. Prior, 53 Mo. 314; Goodin v. Buhler, 65 Mo. App. 290; Temple v. Railroad, 83 Mo. App. 69. (3) The jury is the sole judge of the weight of the evidence and the credibility of the witness. Gregory v. Chambers, 78 Mo. 298, l. c. and cases cited; Rice v. McFarland, 41 Mo. App. 496; Cannon v. Moore, 17 Mo. App. loc. cit. 102; Brewing Co. v. Lindsay, 72 Mo. App. loc. cit. 594; Robinson v. Powers, 63 Mo. App. loc. cit. 292; Goodin v. Buhler, supra; Hamman v. Coal & C. Co., 156 Mo. loc. cit. 242. (4) Had defendants introduced no evidence to over-come plaintiffs' showing of good faith in the acquisition of the notes, the issue under the pleadings, should have been submitted to the jury. Horner v. Railroad, 70 Mo. App. 294, and cases cited; Gay v. Tielkemeyer, 64 Mo. App. 112; Carson v. Porter, 22 Mo. App. 184, and cases cited; Seehorn v. Bank, 148 Mo. 256; Kattelmann v. Fire Ass'n, 79 Mo. App. 452, and cases cited; Baird v. Railroad, 146 Mo. loc. cit. 281; Carter v. Railroad, 156 Mo. loc. cit. 641; State v. Logan, 84 Mo. App. 584. (5) The only consideration for the notes was the exclusive privilege of selling the Farm Record in Vernon county, Missouri, for five years, and equal rights with others in certain other counties. The evidence was that this copyright and the Farm Record were worthless. Before their purchase plaintiffs knew for what the notes were given. This was a good defense. Comings v. Leedy, 114 Mo. 454; Johnson v. McMurry, 72 Mo. 280, 283; Robinson v. Powers, 63 Mo. App. 292; Ganz v. Weisenberger, 66 Mo. App. 113, 115; Whaley v. Neill, 44 Mo. App. 316; Henry v. Sneed, 99 Mo. 422; Mfg. Co. v. Dickson, 70 Mo. 272; Cannon v. Moore, 17 Mo. App. 101. (6) De-

fendants and Rumbley were not on an equal footing and did not deal at armslength. Rumbley's representations, supplemented by Davis's, enlisted the special confidence of defendants and the law will protect them in the trust reposed. McBeth v. Craddock, 28 Mo. App. 395; · Stones v. Richmond, 21 Mo. App. 17; Raley v. Williams, 73 Mo. 310; Bank v. Clark, 52 Mo. App. 593.

. *R. C. Clark* and *W. M. Williams* for respondents.

(1) The only false representations alleged to have been made to these particular defendants, are the statements concerning the number of Farm Records that had been sold in Howard county, and that, "It was a valuable book and farmers could not afford to be without them, and they made me think they could not either." Defendant's final testimony was, that the only fraud of which he had to complain was the representation that he could make money out of the transaction, and it did not turn out that way. The alleged false representations were not of such a character as to authorize legal relief. Statements about the value of property and the future profits that can be made out of a certain business, are mere expressions of opinion. Cornwall v. McFarland, 150 Mo. 377; Wade v. Ringo, 122 Mo. 322; Cahn v. Reid, 18 Mo. App. loc. cit. 127; Anderson v. McPike, 86 Mo. 293. (2) Plaintiffs purchased the notes for value and before maturity. There is no evidence in the record, tending in the slightest degree to impeach their good faith in the entire transaction. They had completed the purchase, received the notes and paid the purchase money several hours before the Gallimore incident, even if that had been sufficient to show that there was any fraud in the manner in which the notes involved in this case were obtained. "The title of one who purchases a note before maturity, can not be

invalidated by his subsequently learning that the payee of the note had been a fraud-feasor." Fitzgerald v. Barker, 96 Mo. 661. (3) It can not be said that, even with the Gallimore incident, plaintiffs had such notice of the alleged fraud in the inception of the particular notes sued on in this case as would make them purchasers *mala fide.* (4) The consideration of negotiable paper in the hands of a bona fide holder for value before maturity can not be inquired into. *"Mala fides* alone can open the door to such inquiry. Gross negligence even is not sufficient. Actual notice of the facts which impeach the validity of the note must be brought home to the holder." Mayes v. Robinson, 93 Mo. 114; Jennings v. Todd, 118 Mo. 296; Inv. Co. v. Vette, 142 Mo. 573; Donovan v. Fox, 121 Mo. 247.

BROADDUS, J.—This suit is upon two promissory notes for $150 each, dated respectively, May 10, 1894, for value received, negotiable and payable to one H. W. Rumbley; one due August 1, 1894, the other due September 1, 1894, each bearing eight per cent interest from maturity, and sold and assigned to the plaintiffs for a valuable consideration before due. The answer admits the execution of the notes and sets up as a defense that they were obtained by the fraudulent representations of the payee Rumbley and his agents; that they were without consideration; and that plaintiffs took them with full knowledge of the fraud and want of consideration.

The record discloses, that in the early spring of 1894, the payee, Rumbley, with others connected with him in the business came to Howard county, for the purpose of selling the right to vend what was known as the "Farm Record," a book got up for the purpose of enabling farmers to keep a record of their farm transactions. This book made its advent into the county, well recommended for its merits, and afterwards,

plaintiff Davis, who was connected with the Farmers and Merchants Bank at Fayette, and other residents of the county, also recommended the book to the farmers. The two notes were bought by plaintiffs Davis and Harrison on the twenty-fifth day of May, 1894, with many others, executed by different individuals for a like consideration, the right to vend said Farm Record. All these notes aggregated about $12,000 which the plaintiffs obtained at something over ten per cent discount, after deducting what they considered the insolvent ones. Davis negotiated for the notes and plaintiff Harrison got the money, paid for them, from his bank at Glasgow. Rumbley was paid $1,000 at the date of the transfer on the twenty-fifth of May and the residue, $7,000, was deposited in the bank to his credit.

There was an effort to prove that Davis got notice of the fraudulent character of the notes and their want of consideration before he concluded his purchase, and certainly Harrison had whatever notice Davis had while the $7,000 was on deposit at his bank. But, however that may be, Davis had as much knowledge of the transactions of Rumbley and his agents before he purchased the notes for himself and Harrison, as he ever had at any time thereafter. This Farm Record was a book got up in such a form as would enable a farmer to keep the different transactions in his business of farming. There is no dispute about it. Rumbley and his agents were selling the right to vend this book in certain counties in the State; the defendants Walden bought the exclusive right to Vernon county for a certain number of years which was evidenced by a written contract, for which they gave the two notes in suit. The defendants had the right under this contract to buy the book at seventy-five cents and the selling price was $2.75 each.

The evidence develops the facts that Rumbley and his assistants were as smooth villians as ever "cut a throat or

scuttled a ship." They made the purchasers, including the defendants, believe that the book would find a ready sale among the farmers. When the purchasers of these county rights made attempts to sell the books, they found that the farmers did not want them, and sales were slow, and then it was first discovered that the scheme was a fraudulent one and the notes without consideration.

The court, upon the close of all the evidence in the case, instructed the jury to find for the plaintiffs. The jury found for the plaintiffs for the amount of the two notes and interest. The defendants appealed and assign as error the action of the court in the premises. The only question for our consideration is, were the notes obtained by fraud in law, were they without consideration, and did plaintiffs have notice before their purchase?

The appellants claim that they were not on equal footing with the payee of the note, Rumbley, and did not deal at arms-length; and that his representations supplemented by that of plaintiff Davis, enlisted their special confidence, and the law will protect them in the trust reposed, and cite in support of their claim: McBeth v. Craddock, 28 Mo. App. 380; Stones v. Richmond, 21 Mo. App. 17; Raley v. Williams, 73 Mo. 310; Bank v. Clark, 52 Mo. App. 593. In the first of these cases, the defendant had represented to the plaintiff at Kansas City, that one Alley owned 160 acres of land in Greenwood county, Kansas, worth $18 per acre, that he had a mortgage on the same for $1,600, that the land was abundant security for the notes that Alley proposed to give the plaintiff. The description of the land was not given to the plaintiff. Afterwards, Alley conveyed to plaintiff certain lands in Kansas. It was shown in evidence that Alley was not the owner of the land, but that defendant was the real owner and that all the representations were false. It was a case where a party pur-

posely misrepresented the facts. The land was in another State and the plaintiff, not having the opportunities of knowing the facts in relation thereto, relied upon the defendant. In the second case, the court held that, "ordinarily a representation as to value, though false, will not be fraudulent, if the parties are upon an equal footing, but merely an expression of opinion; the exception to the rule being, that if the parties are not upon an equal footing, the law does not preclude one from trusting another in regard to those things of which that other has the means of knowledge, and the one is not in a position to know or ascertain the truth from his own observation." In Raley v. Williams, the plaintiff, being familiar with the title to a certain lot, was applied to by defendant for information as to the title of one S. thereto. He replied that it was good so far as he knew. Relying upon this information, defendant purchased of S. Plaintiff knew that the inquiry was made with a view to purchase. At the time of giving the information he had a tax-title to the lot, but he did not know, or at least did not remember it. It was held that he was estopped to assert his title against defendant. In Bank v. Clark, it was held that, if a party is deceived by reason of some natural infirmity or educational defect, his want of faculties to detect fraud shields him, but if he contributes to the imposition or fails to exercise prudent diligence, he should suffer rather than an innocent holder.

The authorities cited do not sustain plaintiffs' claim so far as the facts in this case are shown to be. On the contrary, there is no dispute but what there was such a book as the Farm Record and that it was adapted to the purpose for which it was intended, but the difficulty was that the farmers did not readily invest their money in purchasing it. The defendants saw the book, knew what it was, but lent too willing ears to the smooth talk of Rumbley and his agents. To say that the defendants and

Rumbley did not, in the eye of the law, stand upon an equality, would be an absurdity. Defendants were farmers and were buying to sell to farmers, and they thought when they invested and gave their notes that there was a speculation in selling a seventy-five cent book to their brother farmers for $2.75. They were anxious to speculate upon the credulity of others as Rumbley had speculated upon them, and when they find out, too late, that the farmers could not be pursuaded to buy so cheap a book at such a costly price, they ask the court to relieve them from their obligations.

Plaintiffs knew just as much about the book and its prospect as a salable article as the defendants. They knew this from the start. While they knew all the facts connected with the transaction as well as defendants, they did not know any more. They bought with the same knowledge that the defendants bought with. If the defendants were ignorant of the fraud and of want of consideration, so were the plaintiffs. Is it possible that the courts are required to protect men—grown men—from their own folly and cupidity? That is what is asked in this case. But the courts have adopted a different rule, and that rule is clearly laid down in Stones v. Richmond, supra, viz., as quoted above, that fraudulent representations as to the value of a thing, amounts only to an expression of opinion and affords no ground for relief. In Anderson v. McPike, 86 Mo. 293, the court held: "A mere false representation of value, where no warranty is intended, is no ground of relief to a purchaser because such assertion is a mere matter of opinion, which does not imply knowledge, and is a thing about which men differ." The same rule is laid down in Cornwall v. McFarland Real Estate Co., 150 Mo. 377. "Fraudulent representations, in order to afford a ground of relief, must be of facts which then existed or had existed in distinction from an opinion, a promise or an assured fact." Wade v. Ringo, 122

Mo. loc. cit. 326.  The rule peculiarly adapted to the present case is expressed in Cahn v. Reid et al., 18 Mo. App. loc. cit. 127, as follows: "The rule is, that representations as to value will not be considered fraudulent, though untrue and known to be by the party making them." "When parties are on an equal footing, representations and exaggerations of the value of the property will not be considered fraudulent. The law will presume that a man will take care of himself. He can not go abroad without thought, care or judgment, relying on the law to guide and protect him in his dealings with his fellow man."

We think the action of the court in giving the peremptory instruction was warranted by the pleadings and evidence in the case.  Affirmed.  All concur.