SESSINGHAUS MILLING COMPANY, Appellant,
v. CHRISTOPHER J. HANEBRINK.

Division Two, December 31, 1912.

1. **MILLER: Purchasing Grain for Future Delivery: Liability to Corporation.** The mere purchase of wheat for future delivery by the miller having charge of and managing and controlling the business of a mill owned by a corporation, without any showing that losses resulted either from said purchases or from injudicious sales of grain so bought, does not render him liable to said corporation.

2. ———: ———: **Appeal: Omitting Parts of Record.** Where the trial court had before it accounts, statements, books and exhibits bearing on the question of defendant's indebtedness, which are omitted from the record on plaintiff's appeal from a judgment in favor of defendant, the appellate court will not undertake to say the evidence was sufficient to establish plaintiff's right to recover.

3. **MISJOINDER OF CAUSES: Not Raised in Trial Court: Demurrer: Appeal.** An objection that there is a misjoinder of causes of action in the petition must be raised in the trial court, and unless so raised will not be considered on appeal. A demurrer to the first count to the effect that it does not state a cause of action does not raise the point of misjoinder.

4. **PLEADING: Cheating and Defrauding Customers: Inferior Flour: Miller's Liability to Company.** A petition alleging that plaintiff corporation had established a good reputation for fair dealing and created a lucrative business in certain brands of flour, that respondent was the paid manager and president of the company, that he had charge of and conducted the business, and that as such manager he "wilfully, knowingly and wrongfully manufactured and without any right or authority repeatedly manufactured and sold inferior flour as and for plaintiff's high grade flour," thereby destroying the company's reputation for fair dealing and the reputation of its established finer brands of flour, and impairing its business, capital stock and assets, charges bad faith and intentional deception, and, without any charge of negligence or incompetency, states a cause of action as to defendant's wrong-doing, and of the company's right to recover.

5. ————: ————: ————: ————: **Destruction of Good Will: Deceit: Damages.** The company's right to recover in such case is not dependent on the right of the purchasers of the inferior flour to recover for deceit, but upon the destruction by the defendant of the company's good will by his wilful manufacture and sale of the inferior "as and for" the flour of the higher grade; and good will is a species of property, and for its destruction the law permits the recovery of damages. Nor does the fact that the proof is difficult justify the court in holding the petition does not state a cause of action.

Appeal from St. Louis City Circuit Court.—*Hon. Moses N. Sale*, Judge.

REVERSED AND REMANDED (*in part*).

*Henry H. Oberschelp* for appellant.

(1) The first count of the petition stated a cause of action. Myles v. Myles, 69 Ky. 237; Cooley on Torts (3 Ed.), p. 997, sec. 615; 21 Am. & Eng. Ency. Law (2 Ed.), 875, 876 and 878; Mechem on Agency, secs. 454, 473 and 474; 1 Am. & Eng. Ency. Law (2

Ed.), 1058; Huffcut on Agency (2 Ed.), p. 106, sec. 87; Shea v. Mabry, 1 Lea (Tenn.) 319. (2) The evidence sustained the allegations of the second count of the petition. Hingston v. Montgomery, 121 Mo. App. 451.

*W. B. Thompson* and *Ford W. Thompson* for respondent.

(1) There was no evidence to sustain the second cause of action stated in the petition, which was an action to recover for a loss of $3603.08 and interest on account of purchases, in which it is alleged that the defendant, as president and manager, entered into the contracts for the purchase of wheat to be delivered at a future date, with no intention of receiving the grain or using it for plaintiff's business, but solely to settle the difference between the contract and market prices. R. S. 1909, sec. 4780; State v. Gritznor, 134 Mo. 512; Lane v. Grain Co., 105 Mo. App. 215; Murman v. Rose, 132 Mo. App. 73; Connor v. Black, 119 Mo. 126; Edwards Brokerage Co. v. Stevenson, 160 Mo. 516; Taylor v. Sebastian, 158 Mo. App. 157; State v. Miner, 233 Mo. 333. (2) There was no cause of action stated in the first count of the petition, because (a) there was no allegation that any person was deceived by the purchase of any of the barrels of flour; (b) it appears that the flour was sold in the trade and that such sales were made subject to the rule of *caveat emptor;* (c) it is not actionable to sell unsound property, knowing it to be unsound; (d) there is no allegation in the petition that any purchaser did not know that any of the flour purchased was unsound or was sold under any false brand. Cooley on Torts, 465-475; Stewart v. Dugan, 4 Mo. 245; Stewart v. Dugan, 28 Am. Dec. 348; Harrison v. Walton, 89 Mo. App. 164; Whitmore v. Coates, 14 Mo. 10; Graff v. Foster, 67 Mo. 512; Stevens v. McKay, 40 Mo. 224; Nugent v. Packing

Co., 81 S. W. 506; Tufts v. Morris, 87 Mo. App. 98; 35 Cyc. 240.   (3) The first cause of action in plaintiff's petition was an action *ex delicto;* the second cause of action was an action *ex contractu* .   These two causes of action cannot be joined in the same petition.   R. S. 1909, sec. 1800, par. 5; Hingston v. Montgomery, 121 Mo. App. 451; R. S. 1909, sec. 1795; Otis v. Bank, 35 Mo. 129; Mooney v. Kennett, 19 Mo. 551; Christal v. Craig, 80 Mo. 367; Courtney v. Blackwell, 150 Mo. 273.

BLAIR, C.—Appellant commenced this action in the circuit court of the city of St. Louis to recover from respondent, its former president and manager, damages for injuries to its business from his misfeasance and also to recover certain sums of money alleged to have been lost in speculative transactions in grain.   The petition contains two counts.   In the first count it is alleged appellant is a Missouri corporation, engaged in manufacturing and selling flour; that respondent was its president and paid manager, having charge and managing and conducting the business from June 29, 1901. to January, 1906; that appellant "at all times herein mentioned had several grades and kinds of flour, three of which were known respectively as 'SSSS,' 'Patent' and 'Extra Fancy'; that it had gained an excellent reputation for fair dealing and had created a big market for its said grades and brands of flour which were well known, and by reason thereof plaintiff did a lucrative business, all of which defendant well knew;" that "during the aforesaid period, as such president and manager, and in the management and control of plaintiff's business, defendant knowingly and wilfully and without any right or authority repeatedly manufactured and sold and caused to be manufactured and sold inferior flour as and for plaintiff's high grade flour, known as 'SSSS,' " numerous specific sales being set out in the petition,

coupled with a further allegation of like sales to unknown persons aggregating 10,000 barrels. There are similar allegations as to the manufacture and sale of inferior flour "as and for the high grades" known as "Patent" and "Extra Fancy," aggregating 10,000 barrels in each instance. It is further alleged: "and defendant, as aforesaid, knowingly, wilfully and without any right or authority, repeatedly caused to be ground into flour unsound wheat, uncleaned wheat, and dirt and foreign substances with wheat, and sold and caused to be sold such flour as and for clean, sound, pure flour, which sales were to various persons and customers in various quantities, aggregating in amount fifteen thousand barrels, but the name of the vendee and amount and date of each sale plaintiff does not know and cannot ascertain. And plaintiff states that as a direct result thereof plaintiff's reputation for fair dealing and the reputation of its finer grades or brands of flour were greatly impaired, and its business was well nigh ruined, and its capital stock and assets were seriously impaired, all of which defendant knew and must have known would be and all of which was the direct consequence of his said conduct, and all to plaintiff's damage," etc.

The second count alleges respondent used funds of appellant in paying losses in certain designated speculative ventures, and prays judgment for the sums thus dissipated.

A general demurrer to the first count was sustained and on a trial on the second count a verdict was directed for defendant. Judgment was entered on the demurrer and the verdict and this appeal followed.

The evidence offered on the trial on the second count tended to show respondent made a number of purchases of grain for future delivery. Witnesses explained the mysteries of "puts" and "calls," but there was no evidence respondent's transactions fell

within either of such terms. The evidence indicates, so far as it indicates anything, that the purchases assailed were made on the Merchants Exchange where appellant sold its flour. There were books and exhibits put in evidence which do not appear in this record. The evidence is confusing, uncertain and much of it irrelevant, but the above is a sufficient summary for the purposes of the case.

I. There was no error in directing a verdict on the second count. Flour cannot be made without wheat. Appellant produced no wheat. It had to buy it. With a capacity of four or five hundred barrels per day it was doubtless necessary to make purchases somewhat in advance in order to insure at all times a supply of grain for use in manufacturing flour. It was respondent's duty to do this. The second count does not proceed on the theory of negligence, inattention or poor judgment in buying, but upon the theory there had been no purchases at all, merely pretended purchases. The evidence, in so far as it indicates anything, indicates purchases were made. Respondent had authority to buy. It is not contended he had no authority to sell grain previously purchased, nor that loss resulted from injudicious sales. Recovery is not sought on such grounds. Further, the trial court had before it accounts, statements and the books of the corporation relating to the transactions forming the basis of the second count and several of these exhibits are not in the record before us. When the question at issue is the sufficiency of the evidence, it is seldom safe to omit abstracting any part of it. The omitted exhibits may have negatived appellant's claim. There is nothing in the record as presented to convict the trial court of error in directing a verdict and, as to the second count, the judgment must be affirmed.

II. It is contended there was a misjoinder of causes of action in the petition and as a consequence

the ruling on the demurrer to the first count must be sustained. It is sufficient answer to this that no such question was raised in the trial court. The demurrer to the first count was put solely on the ground that the count stated no cause of action. There was an answer to the second count and no demurrer to the petition as a whole. Demurrers must be specific (Sec. 1801, R. S. 1909) and the objection for misjoinder of counts in a petition must be raised by demurrer in the trial court before it can be considered here. [Jamison v. Copher, 35 Mo. l. c. 486, 487; House v. Lowell, 45 Mo. l. c. 383.]

III. The demurrer to the first count was sustained on the ground that the facts stated were not sufficient to constitute a cause of action. This presents the real question in this case. With mere uncertainties in the allegations and with surplusage we are not now concerned since no motions aimed at such defects were filed below.

The code provides (Sec. 1831, R. S. 1909) that for the purpose of determining the effect of a pleading "its allegations shall be liberally construed, with a view to substantial justice between the parties," and even at common law in case of ambiguity that meaning is to be taken which will support the pleading. With these principles in mind an analysis of the first count of the petition discloses that while its allegations are halting and inartificial, yet these facts, among others, appear: (1) appellant had established a good reputation for fair dealing and created a lucrative business in certain brands of flour, (2) respondent was the paid manager and president of appellant, (3) had charge of and conducted appellant's business, and, (4) as such manager, wilfully and wrongfully manufactured and sold large quantities of inferior flour (5) as and for appellant's high grade flour (of different named brands), thereby (6) destroying appellant's reputation for fair dealing and the reputation of ap-

pellant's established finer brands of flour and impairing its business, capital stock and assets. Neither under the statute (Sec. 1833, R. S. 1909) nor at common law is it necessary to plead presumptions of law. The court takes judicial notice that special skill and knowledge are necessary to the proper performance of the duties devolving upon one who assumes to conduct and manage the business of manufacturing and marketing large quantities of flour and from the fact of respondent's acceptance, for compensation, of the management of appellant's business, nothing more appearing, the law implies an obligation on his part to bring to the discharge of such duties the usual degree of skill commonly possessed by others in like employment and also implies an obligation to act in good faith in the transaction of appellant's business in so far as it was intrusted to him. [Cooley on Torts (3 Ed.), p. 1386; Tiffany on Agency, p. 405.] In this case neither incompetency nor negligence is charged. The allegation is that respondent *"knowingly, wilfully and without right or authority"* manufactured inferior flour and sold it *"as and for"* appellant's higher and finer grades. This is equivalent to an allegation of bad faith, intentional deception of customers. From the allegation of respondent's acceptance of paid employment arises a presumption of the assumption of an obligation on his part to act in good faith. While it is possible appellant might knowingly employ an incompetent or negligent manager and therefore might not ordinarily, in such circumstances, be permitted to recover for losses resulting from ignorance and inefficiency, yet it cannot be presumed appellant contracted with respondent on the theory he would cheat and defraud its customers. The presumption of right action negatives any such inference and amplifies the allegations of the count to that extent. The obligation to act in good faith is added by presumption of law to the allegation of the acceptance of employment and

compensation therefor and respondent's disregard of
that obligation is actionable. [Thompson v. Greeley,
107 Mo. 1. c. 592.]   The violation of duty is sufficiently
charged in that it is stated respondent "knowingly,
wilfully and without any right or authority" manu-
factured inferior flour and sold it *as and for* ap-
pellant's higher grades.  Let it be conceded a mere al-
legation that respondent manufactured inferior flour
would not suffice, since such a product might be never-
theless wholesome and marketable,. though relatively
inferior.   The wilful and unauthorized substitution,
however, of the inferior grade for the higher and the
intentional sale of the inferior under the brand of the
higher grade would be in violation of appellant's duty
to its customers and, consequently, of respondent's
duty to .appellant.   It is not specifically alleged that
buyers were deceived, but the allegation that the in-
ferior product was sold "as and for" the superior
implies as much and is, in itself, the statement of a
fact which could not exist if the buyers were aware of
the substitution.   Respondent's obligation and its
violation are, in view of what has been said, suffi-
ciently set forth to withstand the general objection
taken.

   The remaining question respects the allegations
as to damages suffered.  This, according to respond-
ent's counsel, seems to have been the particular in
which the count was deemed defective.   It is con-
tended the purchasers of the inferior flour could not
have recovered for deceit, the sales being in the open
market, and that this conclusion demonstrates the in-
sufficiency of the count.  The case cited as decisive of
the question (Harrison v. Walden, 89 Mo. App. 164)
was a suit on a note and is grounded on the general
principle that "when parties are on an equal footing,
representations and exaggerations of the value of the
property will not be considered fraudulent.  The law
will presume that, a man will take care of himself,"

etc. Whether or not this rule might be pertinent in a suit by a customer to recover from appellant the difference between the value of the flour delivered and an equal amount of the quality indicated by the brand, it is inapplicable to the case made by the petition. This is not an action by a customer, nor is there any allegation of repayment or liability on appellant's part to repay to any customer the purchase price or any part of it on account of sales of inferior flour. Recovery is not sought on grounds of that kind. The damages claimed are for injuries to appellant's business, reputation, etc. The effect of the allegation is that respondent's course practically destroyed the good will of the business. Good will is a species of property. [Pope-Turnbo v. Bedford, 147 Mo. App. l. c. 698; Fox Co. v. Glynn, 191 Mass. 344.] It is "the advantage or benefit which is acquired by an establishment beyond the mere value of the capital stock, funds, or property employed therein, in consequence of the general public patronage and encouragement which it receives from constant or habitual customers on account of its local position, *or from celebrity or reputation* for skill or affluence or punctuality or from other incidental circumstances or necessities, or even from ancient partialities or, prejudices." [Brown v. Benzinger, 84 Atl. (Md.) l. c. 81, and cases cïted; Millspaugh Laundry v. Bank, 120 Ia. l. c. 4, and cases cited; 3 Sutherland on Damages (3 Ed.), sec. 658.] Good will is a thing of value, which may be bought and sold (Bloom v. Ins. Agency, 91 Ark. l. c. 374; Mfg. Co. v. Hall, 61 N. Y. l. c. 230; Haugen v. Sundseth, 106 Minn. l. c. 133); is, in some instances, said to be subject to appraisal and inventory as an asset of an estate (In re Vivanti, 138 App. Div. 281) and transmissible by will. [In re Teller, 136 N. Y. Supp. 457.] Its destruction by the vendor has been once held to entitle the vendee to plead, to that extent, want of consideration when sued on a note given in

consideration of its purchase. [Potter & Co. v. Wait, 15 Ky. L. Rep. 60.] If wrongful attachment result in injury to the good will of a business it seems redress may be had in an action for damages. [Hansen Mercantile Co. v. Wyman, Partridge & Co., 105 Minn. l. c. 494, 495.] An action lies for fraudulent representations inducing the purchase of good will at a price beyond its value. [Maxwell v. Sherman, 172 Ala. 626, 55 So. 520.] The good will of a business is property which the law protects and for injuries to it damages may be recovered.

The brands used by appellant were *quasi* trade-marks (Peltz v. Eichele, 62 Mo. l. c. 179), trade names, and are objects of the law's protection on principles analogous to those applied in protecting trade-marks. A corporation may acquire, possess and insist upon the protection of good will as well as a natural person or firm (Dodge Stationery Co. v. Dodge, 145 Cal. l. c. 388), and no reason is perceived why respondent is not at least as liable for injuries to the reputation, business, good will of appellant as if he had been wholly unconnected with the latter's affairs. [See Lampert v. Drug Co., 238 Mo. 409.] Respondent's duty, his violation of it and the consequent injury fix his liability and these three things are alleged. So far as concerns the difficulties which will confront appellant in making its proof of damages inflicted that question is not before us. The fact that such proof is difficult does not justify the sustaining of the demurrer in this case. [3 Sutherland on Damages (3 Ed.), Sec. 658; Moorman & Givens v. Parkerson, 59 So. (La.) 122; Gordon v. Knott, 199 Mass. l. c. 180; Millspaugh Laundry v. Bank, supra.] The circumstances considered, appellant will be called upon, in order to recover substantial damages, to "furnish sufficient data to enable the jury, with a reasonable degree of certainty and exactness, to estimate the actual damages" (Shaw v. Jones, 133 Ga. l. c. 450, citing 20 Cyc.

1282), taking into consideration the peculiar nature of the property injured, but that can have nothing to do with the case now before us. If respondent has wilfully wronged appellant ''his is the loss which may arise from the uncertainty pertaining to the nature of it and the difficulty of accurately estimating the results of his own wrongful act.''     [3 Sutherland, supra.]

The first count of the petition is far from being a model. It is doubtful whether the allegations as to grinding into flour unsound and uncleaned wheat are sufficient to warrant the admission of evidence in their support, it not being specifically alleged respondent did so in appellant's service or sold the flour so made for anything other than it was, In determining the question on the demurrer the paragraph mentioned has been ignored. The judgment on the second count is affirmed and the judgment on the first count is reversed and the cause remanded for further proceedings not inconsistent herewith. *Roy, C.,* concurs.

PER CURIAM.—The foregoing opinion of BLAIR, C., is adopted as the opinion of the court. All the judges concur.