### Oscar Bauwens and Theophiel Claeys, Appellees, v. Maurice Goethals, Appellant.

#### Gen. No. 5,942.

1. DAMAGES, § 60*—*when evidence sufficiently certain to sustain recovery for breach of contract not to engage in business.* In assumpsit for breach of a contract not to engage in a business in a certain locality within a specified time, evidence introduced by plaintiff showing that he had incurred a loss in the amount of sales and profits, that defendant had solicited trade in the neighborhood and that he was so doing business there, and that on a certain date a large percentage of defendant's former customers who had been trading with plaintiff entered defendant's store, *held* not to be of so indefinite and uncertain a character as not to sustain a verdict for substantial damages.

2. CONTRACTS, § 376*—*when acts of breach down to time of trial admissible.* In assumpsit to recover for a breach of a contract not to enter into a certain business in a specified community for a certain time, acts of the defendant in breach of the contract down to the date of the trial may be shown.

3. ASSIGNMENTS, § 1*—*when contract not personal.* A contract to refrain from entering into competition is not personal but inures to the benefit of one to whom it is assigned.

4. NEW TRIAL, § 67*—*when juror's statement after the trial incompetent.* An affidavit setting out a conversation after the trial

*See Illinois Notes Digest, Vols XI to XV, and Cumulative Quarterly, same topic and section number.

with a juror tending to show that the jury method of reasoning in arriving at their verdict was improper, *held* incompetent to support a motion for a new trial.

5. NEW TRIAL, § 67*—*when newly-discovered evidence not ground for.* Upon a recovery for breach of a contract, affidavits that plaintiff had made declarations that he was not damaged, and that witnesses had been discovered by whom they could be proved, *held* not to warrant the granting of a new trial.

6. DAMAGES, § 200*—*when instruction as to damages for breach of contract not to engage in business proper.* In assumpsit for breach of a contract not to engage in a certain business in a specified locality for a stated time, an instruction telling the jury that they might fix the amount of damages from all the testimony and facts and circumstances appearing in the evidence, at such sum as would compensate the plaintiffs for all the damages or loss actually suffered by them, if any, by reason of the defendant again engaging in the business, either directly or indirectly, etc., *held* to state the law.

7. APPEAL AND ERROR, § 1031*—*when excessiveness of verdict will not be reviewed.* The question whether a verdict is excessive will not be considered on review where the case is not presented and argued on that theory.

Appeal from the Circuit Court of Rock Island county; the Hon. ROBERT W. OLMSTED, Judge, presiding. Heard in this court at the April term, 1914. Affirmed. Opinion filed July 31, 1914.

J. B. & J. L. OAKLEAF, for appellant.

GEORGE W. WOOD, for appellees.

MR. PRESIDING JUSTICE CARNES delivered the opinion of the court.

This is an action in assumpsit for breach of a contract not to engage in a certain business in a specified locality for stated time. There was a verdict and judgment of $7,500 for the plaintiffs, Oscar Bauwens and Theophiel Claeys, from which the defendant Maurice Goethals, prosecutes this appeal. The difficult question presented is as to the measure of damages,

or rather the degree of certainty of evidence required as a basis on which damages may be assessed.

The facts are as follows:

Maurice Goethals, a Belgian, in February, 1910, was and for some time has been the owner of a clothing and boot and shoe business located in the city of Moline, in a neighborhood where there were about five hundred Belgian families, whose trade he had with little competition. He sold the fixtures, merchandise and good-will of the business to Oscar Bauwens and Theophiel Claeys for $7,305. The purchase price was fixed on the basis of $300 for the fixtures and 95 cents on the dollar for clothing, 100 cents for shoes and 90 cents for miscellaneous goods, ascertained by an inventory of the goods completed February 12, 1910, when appellees took possession. A writing evidencing the transaction was, in the presence of the parties, drafted by an attorney February 5, 1910, containing a stipulation that appellant would not within five years from the date thereof engage, directly or indirectly, or concern himself in carrying on the business of selling clothing, gents furnishing goods, boots and shoes in the city of Moline, either as principal, agent or servant. This writing was not signed at the time. Appellant went to Belgium soon thereafter, and while there in July, 1910, the writing was presented to him and he signed it. He claims there was no agreement that he should not re-enter business, and that his signature to the writing was obtained by fraud, on the representation that it was for the purpose of transferring the insurance on the goods; but we are satisfied from the evidence that the agreement as stated in the contract was made and understood by him, that he signed the contract knowing its contents, and that a substantial part of the consideration for the purchase was the good-will of the business. There certainly is sufficient evidence supporting that conclusion to compel its acceptance when supported by the verdict of the jury.

Appellant returned from Belgium in the Spring of 1911, and about June 3rd a store was opened in the same neighborhood, ostensibly run by his brother, selling the same character of goods in which enterprise appellant aided and assisted, in violation of the provisions of his contract. Afterwards, December 2, 1911, he moved into a new store he had been building during the summer in the same neighborhood, and openly solicited trade and sold the same character of goods. Soon thereafter this suit was brought and declaration filed December 15, 1911, setting up the contract, its violation and damages resulting therefrom. Claeys sold his interest in the business to his partner, Bauwens, in February, 1912. The case was tried in October, 1913.

Appellees introduced evidence that their sales for the first year of their business were $27,000, with a gross profit of thirty-three and one-third per cent, for the second year $12,000, and for the third year $15,000, and tending to show that their net profits for the first year were fifteen per cent. on the amount of sales, or $4,050. They proved that appellant solicited trade of the Belgians in the neighborhood, by advertisements and personal application all the time that he was so doing business there; that the two nearest stores, one eleven and the other twenty blocks away, selling the same character of goods had no appreciable Belgian trade, and that on one Saturday evening after this suit was brought, out of thirty-three customers that entered appellant's store, twenty-two were Belgians who had been customers of appellees after they bought this store.

Appellant contends that this character of evidence is so indefinite and uncertain as to the amount of damages sustained by the violation of the contract that no verdict except for nominal damages can be based thereon. He does not argue that the verdict is excessive if it can be properly based on that character of

evidence. He specifically assigns here as error that the verdict is excessive, but in his written motion for a new trial he presents the usual objections that the verdict is contrary to the evidence and contrary to law, and particularly states: "That there is no data in the record upon which the jury could predicate the damages awarded to the plaintiffs. That there was no evidence presented to the jury upon which they could base their verdict for damages." And does not in terms say the verdict is excessive.

Counsel say that the question here presented has not been decided in this State by the Supreme or Appellate Court, and we know of no such decision. In *Stewart v. Challacombe & Ramsey,* 11 Ill. App. 379, it is said the law enables the plaintiff to recover the actual damage sustained; that the difficulty of ascertaining it has long been recognized, but that does not preclude recovery; the difficulty is in the subject about which the parties have chosen thus loosely to contract. Appellant in his brief says, quoting from *Shaw v. Jones, Newton & Co.,* 133 Ga. 446, and a Missouri case, *Sessinghaus Milling Co. v. Hanebrink,* 247 Mo. 212: "Upon the breach of a contract of sale of the good-will of a business the measure of damages is the loss suffered by the purchaser by reason of the wrongful acts of the seller constituting the breach, and in estimating such damages all the facts and circumstances tending to show the extent thereof may be considered by the jury; but if the plaintiff fails to furnish sufficient data to enable the jury with a reasonable degree of certainty and correctness to estimate the actual damages sustained by the purchaser, then his recovery will be restricted to nominal damages." "Appellant will be called upon, in order to recover substantial damages, to furnish sufficient data to enable the jury with a reasonable degree of certainty and exactness to estimate the actual damages." The Supreme Court of Louisiana in *Moorman & Givens v. Perkerson,* 131 La. 204,

says: "The amount of damages in a case of this kind is difficult of proof. As said, however, in Sutherland on Damages, vol. 3, § 658 (3d Ed.) p. 1914: 'The uncertainty is not to work a denial of justice to a party who has been wronged; the damages must be ascertained from all the facts and circumstances as best they may.'" And it is said in 20 Cyc. 1282: "Upon the breach of a contract of a sale of the good-will of a business, the measure of damages is the loss suffered by the purchaser by reason of the wrongful acts of the seller, and not the profits realized by defendant as the result of his wrongful enterprise; and if plaintiff fails to furnish the data from which the court or jury can estimate his actual damages his recovery will be restricted to nominal damages. But there are cases in which it is impossible to prove the injurious consequences of each particular act; and the substantial damages should be determined by the combined result of the wrongful acts upon the business, and to this end all the facts and circumstances tending to show the extent of the injury should be considered by the court or jury in estimating the damages." Citing *Burckhardt v. Burckhardt*, 42 Ohio St. 474, 51 Am. Rep. 842.

The court instructed the jury for plaintiff (the only instruction complained of): If they found for the plaintiff they might fix the amount of damages from all the tesimony and facts and circumstances appearing in evidence, at such sum as would compensate the plaintiffs for all the damages or loss actually suffered by them, if any, by reason of the defendant's again engaging in the clothing or boot and shoe business either directly or indirectly or concerning himself in conducting or carrying on such business in the city of Moline.

This instruction seems to be in accordance with general principles that are quite well settled. The difficulty is in determining what evidence is sufficient to measure loss of profits. That courts usually refuse to

compensate for loss of prospective profits is familiar law. But the rule may be different when the prospect itself is made the subject of bargain and sale. A party may not sell a prospect for a valuable consideration received and on breach of his contract defend on the ground that the subject-matter is of too uncertain value to permit its measurement in a court of law.

In *Hitchcock v. Anthony*, 83 Fed. 779, 28 C. C. A. 80, the Court speaking through Judge Lurton on this question of proof of damages said: "Evidence was admitted over objection of plaintiff in error for the purpose of showing a loss of profits in Anthony's coal business as damages resulting from the breach of this contract. This was objected to upon several grounds, namely: That such loss of profits was not the natural and proximate result of the breach complained of; that the profits of such a business as that conducted by Anthony was dependent on too many contingencies, was speculative and too uncertain to be the basis of any judgment; and, finally, that no damages except nominal damages could be recovered in a case of this kind unless they are stipulated in the contract. It has been sometimes said that the general rule is that anticipated profits cannot be a basis for recovery in any action for a breach of contract. But there is no sufficient authority for so broad a statement, for profits are always recoverable if proximate, natural, and certain. Sedg. Meas. Dam. (8th Ed.), §§ 176, 177, 192, 193.

In *Brigham v. Carlisle,* 78 Ala. 243, 249, Clopton, J., properly stated the principle when he said:

'Profits are not excluded from recovery because they are profits, but, when excluded, it is on the ground that there are no criteria by which to estimate the amount with the certainty on which the adjudication of courts and the finding of juries should be based.'

In *Griffin v. Colver,* 16 N. Y. 489, 491, Seldon, J., in discussing the supposed rule that profits were not recoverable, said:

'It is not a primary rule, but is a mere deduction from that more general and fundamental rule which requires that the damages claimed should in all cases be shown by clear and satisfactory evidence to have been actually sustained. It is a well-established rule of the common law that the damages to be recovered for a breach of contract must be shown with certainty, and not left to speculation or conjecture; and it is under this rule that profits are excluded from the estimate of damages in such cases, and not because there is anything in their nature which should *per se* prevent their allowance. Profits which would certainly have been realized but for the defendant's default are recoverable; those which are speculative and contingent are not.'

Most frequently, profits prevented are excluded as an element of damages, because such an injury was not a normal and proximate consequence of the breach of the contract. Such was the leading case of *Hadley v. Baxendale,* 9 Exch. 341, where the decision was that loss of profit of a mill was not a natural consequence of a carrier's delay in delivering machinery, the special circumstances not being communicated to the carrier. But the court in that case added that: 'If the special circumstances under which the contract was actually made were communicated by the plaintiff to the defendant, and thus known to both parties, the damages resulting from the breach of such a contract which they could reasonably contemplate would be the amount of injury which would ordinarily follow from a breach of contract under their special circumstances so known and communicated.'

The general subject was considered in *Howard v. Manufacturing Co.,* 139 U. S. 199, 206, 11 Sup. Ct. 500, and *U. S. v. Behan,* 110 U. S. 338, 344, 4 Sup. Ct. 81. In the latter case, Justice Bradley, on this subject of damages for a breach including profits prevented, said:

'Profits cannot always be recovered. They may be too remote and speculative in their character, and therefore incapable of that clear and direct proof which the law requires. But when, in the language of Chief Justice Nelson, in the case of *Masterson v. Mayor of Brooklyn*, 7 Hill, 69, "they are the direct and immediate fruits of the contract," they are free from this objection. They are then part and parcel of the contract itself, entering into and constituting a portion of its very elements,—something stipulated for, the right to the enjoyment of which is just as clear and plain as to the fulfillment of any other stipulation.'

But in the case before us the very object of the contract which has been broken was to secure the coal business of Anthony against any loss of business and consequent profit which might result from a competitive business conducted on the dock sold by him to Hitchcock. To protect his business, and secure the possible profits resulting therefrom against competition, was the occasion of this agreement; and, if plaintiff in error has knowingly and purposely rented this dock for the purpose of enabling his lessee to carry on a competing coal business, the damages which are recoverable naturally and proximately include any gain prevented which could be certainly shown to have resulted from the competition. The evidence offered was relevant and competent. It related directly to the business conducted by Anthony both before and after the contract, and before and after its breach, and did not touch any mere collateral business or anticipated collateral profit.    *    *    *

But it is further objected that the evidence upon which plaintiff relied to show loss of profits was vague and speculative, and did not amount to legal evidence of any loss of profits, and that the court should so have instructed the jury, having been so requested. There was evidence of the amount of coal sold by defendant in error to steamers for a series of years before and

after this breach, and of a reduction in the profit per ton, caused by the lower price at which the competing dealer offered and sold coal. There was also evidence that while the demand for coal by steamers at Detour increased from year to year, as the tonnage navigating the St. Mary's river increased, the value of Anthony's business declined. This was competent evidence from which the jury might reasonably infer some damage by loss of profit. It was therefore not error to refuse an instruction limiting a recovery to nominal damages.

The question as to whether the verdict was for too great a sum, under the evidence, is not one for our consideration, being one remediable only under a motion for a new trial.''

We have quoted at length from that opinion because it clearly expresses what seems to us the correct view of the law. The case of *Salinger v. Salinger,* 69 N. H. 596, is to the effect that the plaintiff may recover for loss of profits during the stipulated term, and for diminution in value of the good-will at the end of the term. In *Sessinghaus Milling Co. v. Hanebrink,* 247 Mo. 212, the Missouri case decided in 1912, before referred to, authorities are collected holding that good-will is a species of property, a thing of value which may be bought and sold, and property which the law protects. And in speaking of the difficulty in making proof of damages the Court says, quoting from Sutherland on Damages, vol. 3, sec. 658 (3d Ed.): ''His (defendant) is the loss which may arise from the uncertainty pertaining to the nature of it and the difficulty of accurately estimating the results of his own wrongful act.''

It is objected that the court allowed evidence of the acts of defendant in breach of the contract down to the date of the trial. Counsel also suggest that Claeys having sold his interest in the business in February, 1912 (after the suit was brought), that fact may have some bearing on the admission of such evidence. The

law seems to be settled that an agreement to refrain from entering into competition is not personal but inures to the benefit of one to whom it is assigned. It is so held and the authorities collected in *Knowles v. Jones* (Ala.), 62 So. 514. Damages may be shown occurring after the commencement of the suit to show more clearly the gains prevented. Sutherland on Damages, vol. 3 (3d Ed.), p. 1917; *Hercules Coal & Mining Co. v. Central Investment Co.,* 98 Ill. App. 427; *Mount Hope Cemetery Ass'n v. Weidenmann,* 139 Ill. 67. The fact that the vendor, plaintiff, had disposed of his interest in the business was held no defense in *Boyce v. Watson,* 52 Ill. App. 361.

Appellant supports his motion for a new trial by several affidavits, one of which sets out a conversation after the trial with a juror, in which it was learned that the jury's method of reasoning in arriving at their verdict was improper. This was clearly incompetent. Other affidavits supported the claim that declarations of appellees, tending to show that they were not damaged by the competition complained of, had been made and witnesses discovered, by whom they could be proved. We see nothing in these affidavits warranting the granting of a new trial.

It is true the damages awarded are large compared with the purchase price of the property; but the purchase price is not the criterion. Large damages may result from breach of contract to do or not do something for a small consideration. As we have before said, the case is not presented and argued on the theory that the verdict is excessive, but on the theory that no substantial verdict can rest on the characer of evidence introduced. Holding that a substantial verdict may be supported on that character of evidence and perceiving no substantial error in the record, the judgment is affirmed.

*Affirmed.*