Brenda M. HANSON,
Plaintiff–Respondent,

v.

Jonathan Grant HANSON,
Defendant–Appellant.

Barbara GRAHAM,
Petitioner–Appellant/Cross–Respondent,

v.

Richard GRAHAM,
Respondent–Respondent/Cross–Appellant.

Nos. 68827, 69067.

Supreme Court of Missouri,
En Banc.

Sept. 15, 1987.

As Modified on Denial of Rehearing
Oct. 13, 1987.

Dale C. Doerhoff, Jefferson City, for Jonathan Hanson.

James W. Gallaher, Jefferson City, for Richard Graham.

Jean E. Goldstein, James C. Butcher, Columbia, for respondents.

ROBERTSON, Judge.

These are consolidated appeals arising out of decrees of dissolution of marriage entered by the Circuit Courts of Boone County and Cole County. The husbands in the consolidated cases are the sole partners in an oral surgery partnership. *In Hanson v. Hanson,* the Circuit Court of Boone County valued the partnership at $324,862, including $233,727, an amount characterized as "goodwill" by the parties. In *Graham v. Graham,* the Circuit Court of Cole County, hearing virtually identical evidence, valued the same partnership at $90,280.

The Western District affirmed the judgment of the Circuit Court of Boone County in *Hanson v. Hanson* as to the dissolution of the marriage "and the determination that professional goodwill is a divisible asset" but reversed the case "in all other respects."

We granted transfer to determine whether our dissolution of marriage laws recognize the existence of goodwill in a professional practice as a marital asset and to determine the extent to which those laws permit the division of such goodwill upon dissolution of marriage. Following our grant of transfer in *Hanson v. Hanson,* No. 68827, the Court of Appeals, Western

District, received a notice of appeal in *Graham v. Graham,* No. 69067; that court recommended, and we granted, transfer prior to opinion in the *Graham* case. We have jurisdiction. Mo. Const. art. V, sec. 10.

We hold that goodwill in a professional practice is a marital asset subject to division in dissolution proceedings. The judgment of the Circuit Court of Boone County in *Hanson v. Hanson* is affirmed in part, reversed in part and remanded with directions. The judgment of the Circuit Court of Cole County in *Graham v. Graham* is affirmed in part, reversed in part, and remanded with directions.

## I.

### The Oral Surgery Partnership

Drs. Graham and Hanson formed their partnership for the practice of oral surgery in Jefferson City, Missouri, in July, 1973. At trial, both Mrs. Hanson and Mrs. Graham employed Stephen Smith, a C.P.A., as an expert witness. Smith valued the oral surgery partnership as follows:

| | |
|---|---|
| $ 39,750.00 | equipment |
| $ 51,385.00 | accounts receivable |
| $351,077.00 | going concern value |
| $442,212.00 | Total Value |

Smith defined "going concern value" as the "opportunity to walk into a successful situation and to start work and earn money without having to build the practice." Smith further testified that going concern value represented the ability of the buyer to trade on the past reputation of the seller.

Smith applied an 85 percent capitalization rate to the previous year's gross receipts to determine the value of the partnership. This capitalization rate was the product of Smith's assessment of the partnership's "monopolistic" position in the Jefferson City market, its expenses, the degree of risk attendant to the practice, and the reputation of the practice and the practitioners in the community. From these factors, Smith fashioned a tentative going concern value for the partnership. He compared his tentative conclusions to the national average sales price for oral surgery practices, for gross production per oral surgeon, and for average revenues and expenses for oral surgery partnerships containing five or fewer oral surgeons. From these considerations Smith reached his conclusion as to the appropriate capitalization factor to apply to the Graham and Hanson partnership.

Smith defined "goodwill" as the excess of return in a given business over the average or norm that could be expected for that business. Smith found no such excess in the partnership, and thus no goodwill, even though he testified that going concern value contained a component of the seller's reputation.

Both Dr. Hanson and Dr. Graham produced Elmer Evers, C.P.A. as an expert for purposes of valuing their partnership interests. Evers valued the partnership at $91,000, the approximate value of equipment, cash on hand and accounts receivable. Evers compared sales of professional practices in the area served by the partnership, the nature of the partnership's patronage, and the reputation of the partners to determine that neither goodwill nor going concern value existed in the partnership.

Dr. Thomas Coyle, an oral surgeon practicing in Columbia, Missouri, testified on behalf of Dr. Hanson. Dr. Coyle bought into a partnership with another oral surgeon already in practice in Columbia in 1975. He testified that his purchase price included neither an amount for goodwill nor for the going concern value of the existing practice. Upon the retirement of Dr. Coyle's partner, Dr. Coyle bought his partner's interest in the partnership; again, Dr. Coyle paid nothing for goodwill or going concern value.

Drs. Graham and Hanson introduced their partnership agreement in their respective cases. Paragraph eight of that agreement provided:

> The value of the interest of a withdrawing partner shall be the sum of: (a) One-half of the reasonable market value of the fixtures, equipment and contents of the office partnership; (b) His propor-

tionate share of the accrued net profits; (c) One-half of all accounts receivable as of the date of dissolution which can be reasonably expected to be collected in the first six months following the date of dissolution; (d) No value for goodwill or firm name shall be included in any computations of a partner's interest; (e) If a net loss has been incurred to the date of dissolution, his share of such loss shall be deducted.

Dr. Hanson testified that profits were drawn from the partnership account twice monthly; there were no accrued net profits.

### The Hanson Marriage

Dr. and Mrs. Hanson married on March 20, 1974. By the time of the marriage, Dr. Hanson had already completed his oral surgery training, had retired all but $1,000 of the debt he incurred to finance his education and had opened the oral surgery practice with Dr. Graham. Mrs. Hanson came to the marriage with a nursing degree. Following the marriage, Mrs. Hanson continued to pursue her nursing career. She earned a Master's Degree in nursing in December, 1981. At the time of the trial, Dr. Hanson earned approximately $120,000 per year in his oral surgery practice; Mrs. Hanson earned approximately $7,000 per year. There were no children.

The Boone County Circuit Court valued the partnership at $324,862.00, an amount which included the fair market value of the partnership's equipment ($39,750), the accounts receivable ($51,385) and the partnership's ordinary income for 1984 ($233,727). The trial court noted that it used "the valuation technique contained in paragraph 8 of [the Graham and Hanson] partnership agreement." The court dissolved the marriage, ordered maintenance in favor of Mrs. Hanson of $1,000 per month for 24 months, and divided the other assets of the parties, including Dr. Hanson's share of the partnership.

Dr. Hanson appeals the valuation of his partnership interest by the circuit court. He attacks the admissibility of the testimony of Mrs. Hanson's expert, Mr. Smith. He also assigns error (1) to the division of a portion of the marital property on an equal basis where appellant provided 95 percent of the marital assets, (2) in the court's valuation of a money market account, and (3) the valuation of a bank account.

### The Graham Marriage

Dr. and Mrs. Graham married on May 24, 1969. The marriage produced two children. By the time of the marriage, Dr. Graham had completed his dental studies; he finished his oral surgery training during the marriage. Mrs. Graham completed registered nurse training prior to the marriage. In 1978, the Grahams began investing in real estate. The couple accumulated several parcels of improved real estate, Mrs. Graham managed the couple's properties. In 1980, she obtained a real estate license and began selling real estate on a full-time basis. In 1983, Mrs. Graham grossed approximately $27,000 as a real estate salesperson. After the couple's separation in 1983, her income declined to $5,000 in 1984. Dr. Graham earned approximately $120,000 per year at the time of the trial.

The Circuit Court of Cole County dissolved the marriage, valued Dr. Graham's interest in the partnership at $45,140, divided the marital property equally between the parties, awarded Mrs. Graham permanent maintenance of $500 per month to continue until remarriage, death or modification by court order, awarded custody of the minor son to Dr. Graham and of the minor daughter to Mrs. Graham, established reasonable rights of visitation to the noncustodial parent, and fixed Dr. Graham's child support obligation at $500 per month, payable to Mrs. Graham.

Both parties appealed the trial court's order. Mrs. Graham assigns error to the court's valuation of Dr. Graham's interest in the oral surgery partnership. She also contends the trial court erred in (1) valuing certain items of personal property, (2) valuing bank accounts held in the names of the minor children, (3) valuing a Keough Plan, (4) valuing the Graham's investment real property and (5) failing to award her attor-

ney's fees and costs. Dr. Graham appeals the trial court's award of permanent maintenance to Mrs. Graham.

## II.

■ Section 452.330.1, RSMo 1986, authorizes the court to "set apart to each spouse his property and ... divide the marital property in such proportions as the court deems just...." Marital property is "all property acquired by either spouse subsequent to the marriage" with exceptions not relevant here. Section 452.330.2, RSMo 1986. Property acquired during the marriage is presumed marital property. Section 452.330.3, RSMo 1986. Conversely, property acquired prior to the marriage or after the entry of decree of legal separation or dissolution is not marital property. *Id.*

### A.

■ Is goodwill property? Our courts have long recognized that "the good will of a business is property...." *Sessinghaus Milling Co. v. Hanebrink*, 247 Mo. 212, 152 S.W. 354, 357 (Mo.1912); *Montgomery v. Getty*, 284 S.W.2d 313 (Mo.App.1955); *Magee v. Pope*, 234 Mo.App. 191, 112 S.W.2d 891, 899 (1938); *Kreger Glass Co. v. Kreger*, 49 S.W.2d 260 (Mo.App.1932). Goodwill produced in a professional setting is no less property than that arising from a commercial setting.

Accounting texts define goodwill as "an economic advantage which exists when the total value of a business is more than the value of its identifiable assets. This economic advantage arises because the expected earnings of the business exceed the level of earnings on only its identifiable assets...." Welsch, Zlatkovich, and Harrison, *Intermediate Accounting*, 438 (6th ed. 1982). "[It] is an intangible asset that attaches to a business as a result of such favorable factors as location, product superiority, reputation, and managerial skill...." Niswonger and Fess, *Accounting Principles*, 257 (12th ed. 1977).

Courts have defined goodwill as "nothing more than the probability, that the old customers will resort to the old place." *Crutt-*

*well v. Lye*, 17 Ves. 335, 346, 34 Eng.Rep. 129, 134 (Ch. 1810). "Men will pay for any privilege that gives a reasonable expectancy of preference in the race of competition. Such expectancy may come from succession in a place or name or otherwise to a business that has won the favor of its customers." *In re Brown*, 242 N.Y. 1, 6, 150 N.E. 581, 582 (1926).

The common theme in all of these definitions is that the goodwill which can be sold, and is therefore property, attaches not to an individual but to a business entity. Goodwill has no separate existence; it has value only as an incident of a continuing business.

### B.

In addressing the question of the existence and value of goodwill in a professional context as marital property, the courts have not spoken with a uniform voice.

#### 1.

In *Dugan v. Dugan*, 92 N.J. 423, 457 A.2d 1 (1983), the New Jersey Supreme Court found that goodwill in the law practice of a sole practitioner is property subject to distribution in a dissolution action. The court recognized that reputation is "at the core" of any consideration of professional goodwill. 457 A.2d at 6. While acknowledging that future earning capacity is not *per se* goodwill, the New Jersey justices noted that when "future earning capacity has been enhanced because reputation leads to probable future patronage from existing and potential clients, goodwill may exist and have value." *Id.* *Dugan* has been criticized, and properly so in our view, for its failure to distinguish between the reputation of the professional as an individual and the reputation of the professional practice as a business entity. Parkman, *The Treatment of Professional Goodwill in Divorce Proceedings*, 18 Fam. L.Q., 213, 219 (Summer 1984).

In *In the Matter of the Marriage of Fleege*, 91 Wash.2d 324, 588 P.2d 1136 (banc 1979), the Washington Supreme Court defined the critical question as "not

whether the goodwill of the practice could be sold ... but whether it [the goodwill] has value to [the practitioner]." 588 P.2d at 1138–9. In determining the value of the such goodwill, *Fleege* outlined several factors for consideration: "[T]he practitioner's age, health, past earning power, reputation in the community for judgment, skill and knowledge, and his comparative professional success." 588 P.2d at 1138. Each of these factors is, in our view, directly attributable to the professional as a person. For this reason, we find that the *Fleege* analysis is mired in the same mixture of personal reputation and entity reputation as is found in *Dugan*.

### 2.

Several courts have refused to acknowledge professional goodwill as property. A leading case is *Holbrook v. Holbrook*, 103 Wis.2d 327, 309 N.W.2d 343 (App.1981). There the court refused to follow "the twisted and illogical path that other jurisdictions have made in dealing with the concept [of professional goodwill] in the context of divorce." The court continued, "[t]he concept of professional goodwill evanesces when one attempts to distinguish it from future earning capacity.... The goodwill or reputation of such a business accrues to the benefit of the owners only through increased salary." 309 N.W.2d at 354. *See also Powell v. Powell*, 231 Kan. 456, 648 P.2d 218, 223 (1982). ("We are not persuaded that a professional practice such a Dr. Powell's has a good will value. The practice is personal to the practitioner.... [I]t is totally dependent upon the professional.") *Nail v. Nail*, 486 S.W.2d 761 (Tex.1972), reaches a similar result.

### 3.

Between the opposing results reached in *Dugan* and *Holbrook*, several courts have attempted to chart a course which recognizes that goodwill is marital property, but only insofar as it exists independently of the individual professional's reputation. Characteristic of these cases is *Taylor v. Taylor*, 222 Neb. 721, 386 N.W.2d 851 (1986). There the Nebraska Supreme Court concluded that "goodwill must be a business asset with value independent of the presence or reputation of a particular individual, an asset which may be sold, transferred, conveyed, or pledged.... If a party produces appropriate evidence establishing salability or marketability of goodwill as a business asset of a professional practice, professional goodwill may be considered in determining the value of property in a marital estate to be divided in a dissolution proceeding." *Taylor*, 386 N.W.2d at 858–9.

*Beasley v. Beasley*, 359 Pa.Super. 20, 518 A.2d 545 (1986), and *Geesbreght v. Geesbreght*, 570 S.W.2d 427 (Tex.Civ.App.1978), are equally insistent on separating the reputation of the professional from the reputation of the business entity in which he practices in determining the value of any goodwill in a professional setting.

### C.

■ As we have said, goodwill is recognized as property in this state; that recognition is not dependent on a traditional mercantile setting. Goodwill may exist in both commercial and professional entities. Irrespective of the setting in which it is found, the meaning of goodwill does not change. It is property which attaches to and is dependent upon an existing business entity; the reputation and skill of an individual entrepreneur—be he a professional or a traditional businessman—is not a component of the intangible asset we identify generally as goodwill.

■ With the caveats which follow, we hold that goodwill in a professional practice acquired during a marriage is marital property subject to division in a dissolution of marriage proceeding. We define goodwill within a professional setting to mean the value of the practice which exceeds its tangible assets and which is the result of the tendency of clients/patients to return to and recommend the practice irrespective of the reputation of the individual practitioner. Our understanding of goodwill is thus consistent with and no broader than the economic, accounting and legal definition which existed prior to the advent of

*Dugan, Fleege* and cases reaching similar results.

Goodwill is not dependent, however, on the manner in which the professional practice is organized nor the size of the practice itself. We recognize, as is implied in *Geesbreght*, 570 S.W.2d at 427, that goodwill will more likely exist in larger professional practices than in the offices of sole practitioners. This is so because reliance by patients/clients on the reputation and skill of the individual practitioner is, in most cases, inversely related to the number of practitioners in the practice. However, to the extent that, for instance, competent evidence exists that clients/patients will return to the place of the practice—or recommend it to acquaintances who have not yet patronized it—irrespective of the presence of the individual professional, goodwill exists in the solo practice.

Professional goodwill may not be confused with future earning capacity. We have not declared future earning capacity to be marital property. We do not now do so. Instead, we leave to the trial court broad discretion in striking an appropriate balance between husband and wife in the division of property and any award of maintenance. *Scott v. Scott*, 645 S.W.2d 193 (Mo.App.1982).

### D.

#### 1.

■ Proof of the existence of goodwill is particularly troublesome in a professional context. This difficulty is a product of the fact that the reputation of the individual practitioner and the goodwill of his enterprise are often inextricably interwoven. Because of the difficulties inherent in separating the reputation of the professional from that of his enterprise, evidence that other professionals are willing to pay for goodwill when acquiring a practice is, in our view, the only acceptable evidence of the existence of goodwill. Thus, as a matter of proof, the existence of goodwill is shown only when there is evidence of a recent actual sale of a similarly situated professional practice, an offer to purchase such a practice, or expert testimony and testimony of members of the subject profession as to the existence of goodwill in a similar practice in the relevant geographic and professional market. Absent such evidence, one can only speculate as to the existence of goodwill.[1] Divisions of marital property may not be based on speculation as to the very existence of the property being divided.

#### 2.

■ As to the issue of valuation, *In re the Marriage of Hall*, 103 Wash.2d 236, 692 P.2d 175, 179–80 (1984), outlines five major formulae for establishing goodwill value. Of these, three are accounting formulae. The first utilizes a straight capitalization method. The average net profits of the professional are capitalized. The result is the total value of the business including tangible and intangible assets. Book value of the assets is subtracted to determine goodwill value.

The second formula is the capitalization of excess earnings method. The annual salary of the average employee practitioner is subtracted from the average net income of the practice. The remaining amount is multiplied by a capitalization rate to determine goodwill value.

The third method is the Internal Revenue Service variation of capitalized excess earnings. Under this formula, a reasonable rate of return based on the business' average net tangible assets is subtracted from the average net income of the business for the last five years. From this amount a comparable net salary is subtracted. A capitalization rate is applied to determine goodwill value.

The fourth *Hall* formula focuses on fair market value. The value of goodwill, if

---

1. Courts which have employed capitalization formulae, *see* discussion, *infra,* often appear to mix concepts of value with concepts of proof. *See, e.g., In re Marriage of Hall,* 692 P.2d at 175. Expert testimony concerning the value of goodwill based on capitalization formulae is not tantamount to proof of the existence of goodwill. An expert can simply assume the existence of goodwill and, using a capitalization formula, produce a value.

any, is determined by the price the practice would bring were it sold on the open, relevant market to a qualified professional.

The fifth valuation method is based on a buy-sell agreement. The value established in a partnership agreement, for example, determines the value of any goodwill in the practice.

Of the suggested formulae, we state our strong preference for the fair market value approach. First, the fair market value approach "does not take explicitly into consideration the future earning capacity of the professional goodwill or the post-dissolution efforts of the professional spouse." Comment, *Professional Goodwill in Louisiana: An Analysis of Its Classification, Valuation and Partition*, 43 La.L.Rev. 139, 142 (1982). As we have previously said, in Missouri, the future earning capacity of one of the marital partners is not *per se* property. *See*, discussion at II, C. *supra*.

Second, fair market value evidence appears to us to be the most equitable and accurate measure of both the existence and true value of the goodwill of an enterprise. Evidence of a recent actual sale of a similarly situated practice, an offer to purchase the subject or a similar practice, or expert testimony and testimony of members of the subject profession as to the present value of goodwill of a similar practice in the open, relevant, geographical and professional market is the best evidence of value.

Third, the fair market value method is most likely to avoid the "disturbing inequity in compelling a professional practitioner to pay a spouse a share of intangible assets at a judicially determined value that could not be realized by a sale or another method of liquidating value." *Holbrook*, 309 N.W.2d at 355. We therefore reject the notion advanced by some courts that goodwill may exist and be subject to division in a dissolution proceeding even though it may not be sold. *See*, e.g. *In re Marriage*

*of Freedman*, 23 Wash.App. 27, 592 P.2d 1124 (1979); *Hall*, 692 P.2d at 175.

Under certain circumstances, the buy-sell agreement method for determining goodwill value may be appropriate. We believe the trial court is best suited to determine when a buy-sell agreement constitutes competent evidence of goodwill value, *In re Marriage of Morris*, 588 S.W.2d 39, 43–4 (Mo.App.1979), recognizing that "the professional spouse may be influenced by many factors other than fair market value in negotiating the terms of the agreement...." *Hall*, 692 P.2d at 180.

We reject the use of capitalization formulae as a substitute for fair market value evidence of the value of goodwill in a professional practice.[2] The very purpose of capitalization formulae is to place a present value on the future earnings of the business entity being valued. *Beasley*, 518 A.2d at 552. The formulae draw no distinction between the future earning capacity of the individual and that of the entity in which he or she practices. And as we have said previously, the future earning capacity of the individual professional is not, *per se*, an item of marital property subject to division in a dissolution proceeding.

### III.

#### A.

The wives' expert, Mr. Smith, found a going concern value of $351,077 in the partnership. "Going concern value" is defined as follows:

A business that is established and operating but with only average profits is more valuable than a collection of similar assets and liabilities about to be launched as a business. This difference, the "more valuable" aspect, is the essence of going [concern] value.... Thus, going [concern] value is akin to goodwill, but different from it. Goodwill relates to above-average profitability; going [concern] value does not.... In acquisition

---

**2.** We recognize that evidence of the fair market value of the goodwill of an entity may reveal that such value is the product of the application of a capitalization rate to the gross receipts or

net income of the entity. To the extent that fair market value as shown by the evidence includes such a product, we obviously do not reject it.

transactions in which goodwill is properly recognized, a portion of the payment may actually represent a payment for going [concern] value, but separation of the two is almost never attempted. Any going value in such a case usually is subsumed under goodwill.

Welsch, Zlatkovich and Harrison, *Intermediate Accounting*, 438, n. 3, (6th ed. 1982).

Goodwill in the economic sense is another word for organization. To be more specific, *the value of goodwill is derived from the economic benefits that a going concern may enjoy as compared with a new firm,* ... [Emphasis added.]

Parkman, *The Treatment of Professional Goodwill in Divorce Proceedings*, 18 Fam. L.Q. 213, 214 (1984).

*Dugan*, 457 A.2d at 5 notes that [g]oodwill is keyed to reputation; going concern value to the enhanced value of assets due to their presence in an established firm. [citation omitted]. Going concern value has many of the characteristics of goodwill and in many situations will constitute an asset enhancing the value of an enterprise. In that event it will be a component of the property subject to equitable distribution.

Going concern value contemplates an ongoing business entity; it obviously cannot attach to an individual practitioner.

Smith testified that there was no goodwill in the oral surgery partnership. Yet he also testified that going concern value contains a component of the seller's reputation and the ability of the buyer to trade on that reputation. The attorneys representing the parties in these proceedings characterize the trial courts' errors as either failing to include or including goodwill in the partnership as an element of marital property. From a technical accounting perspective, the issue may be mischaracterized. In dissolution proceedings, the courts, however, tend to treat going concern value and goodwill as synonyms in a professional context. *See, e.g., Hall,* 692 P.2d at 175, and *In re Marriage of Hull,* 712 P.2d 1317 (Mont.1986). We believe such treatment is correct.

## B.

### Hanson v. Hanson

■ Dr. Thomas Coyle stated that he paid nothing for either goodwill or going concern value when he joined an established oral surgeon in a partnership in Columbia or when he purchased his partner's interest in the practice upon the partner's retirement. The husbands' expert, Mr. Evers, testified that in his experience similar practices were sold in the geographic area of the partnership without payment for goodwill or going concern value. He concluded that there was no going concern value or goodwill in the partnership. Mr. Smith, the wives' expert, provided no fair market value evidence for goodwill or going concern value in the relevant geographical market, relying instead on a capitalization formula we have rejected as competent evidence of goodwill.

The Circuit Court of Boone County valued the partnership at $324,862. This included $233,727, the partnership's ordinary income for 1984. Ostensibly, the trial court based its valuation on Paragraph Eight of the partnership agreement. We find no support for the trial court's conclusion in either that document or in the evidence before the court.[3] The fair market value evidence in the record indicates no goodwill value in the partnership. On the issue of the valuation of the partnership, we therefore remand the case to the Circuit Court of Boone County with directions to assign a value to Dr. Hanson's share in the oral surgery partnership which does not reflect either goodwill or accrued net profits.

**3.** Paragraph Eight of the partnership agreement provides that a withdrawing partner is entitled to ½ of the market value of fixtures and equipment, his proportionate share of accrued net profits, ½ of the collectible accounts receivable and nothing for goodwill. Dr. Hanson testified that the partnership had no accrued net profits.

The trial court's inclusion of an amount greater than the value of the fixtures and equipment and accounts receivable is therefore not supported by Paragraph Eight of the partnership agreement. And, for the reasons we state, the evidence does not support any value in the partnership for goodwill or going concern value.

■ Dr. Hanson also assigns error to the trial court's division of marital property on an equal basis between the parties. The division of marital property lies within the sound discretion of the trial court. We will disturb the trial court's division of the property only where it is improper, or where an abuse of discretion is shown. *Dardick v. Dardick,* 670 S.W.2d 865, 868 (Mo. banc 1984).

Section 452.330.1(1), RSMo 1986, requires the trial court to consider the contributions of each spouse to the acquisition of marital property, including the contribution of the spouse as a homemaker. There is no dispute that Dr. Hanson brought more money into the household than did Mrs. Hanson; having reviewed the evidence, however, we find that the trial court's decision is amply supported. We find no abuse of discretion. Dr. Hanson's point is without merit.

Nevertheless, our holding as to the absence of goodwill value in Dr. Hanson's interest in the oral surgery partnership may require an adjustment in the overall division of the marital property. We therefore reverse the judgment of the trial court as to its division of the marital property and remand for reconsideration in light of this opinion.

Dr. Hanson's fourth and fifth points on appeal assign error to the trial court's valuation of a money market account and an account in the South County Bank. We need not reach these points here. On remand, the trial court will fashion a new division of marital property. The court may wish to consider Dr. Hanson's arguments as to the proper value of the account.

The judgment of the Circuit Court of Boone County in *Hanson v. Hanson* is affirmed as to the dissolution of the marriage. In all other respects, the judgment of the trial court is reversed and remanded with directions to conduct such further proceedings as may be necessary and are consistent with this opinion.

## C.

### Graham v. Graham

■ The only evidence of fair market value before the trial court in the *Graham* case consisted of the testimony of Elmer Evers, Dr. Graham's expert. As he did in the *Hanson* case, Mr. Evers stated that in his experience in the relevant market, practices similar to that of the Graham and Hanson oral surgery partnership are sold without payment for goodwill or going concern value. The court heard no contrary fair market value evidence. We must, therefore, affirm the trial court's valuation of the oral surgery partnership.

■ Dr. Graham assigns error to the trial court's award of permanent maintenance to Mrs. Graham. The trial court has broad discretion in determining both the amount and duration of maintenance. We will interfere only where the award is improper or there is an abuse of discretion. *Dardick,* 670 S.W.2d at 868. Our review of the record reveals no abuse of discretion. The point is denied.

Mrs. Graham urges that the trial court erred in the division of several items of personal property. We will disturb the trial court's division of property only where it is improper or an abuse of discretion is found. *Dardick,* 670 S.W.2d at 868. Our review of the record does not reveal an improper division of the property or an abuse of discretion. The point is denied.

■ Mrs. Graham next contends that the trial court erred in valuing and setting aside as marital property three certificates of deposit (one held in the name of Dr. Graham and son, Jonathan, one held in the name of Dr. Graham and daughter, D'Arcy, and one held in the name of Mrs. Graham and D'Arcy), and two bank accounts (one held in the name of Dr. Graham and Jonathan and one held in the name of Dr. Graham and D'Arcy). Mrs. Graham claims these certificates are custodial accounts for the children under the Uniform Gifts to Minors Act, Sections 404.020, .030 and .040, RSMo 1978 (the law in effect at the time of trial).

We must deny Mrs. Graham's point. The trial court heard no evidence supporting her claim. No evidence was presented

that the formalities required by the Act were met in establishing the accounts or in purchasing the certificates. The evidence showed only accounts held in joint names. On the evidence before it, the trial court cannot be convicted of error in characterizing the accounts and certificates as marital property.

For her fourth point on appeal, Mrs. Graham argues that the trial court erred in valuing Dr. Graham's Keough Plan at $104,136 and apportioning $77,317 of that amount to her. The central issue for Mrs. Graham's purposes is whether the Plan should be valued at the date the dissolution action is filed or at the time of trial. With commendable candor, Dr. Graham admits that the valuation placed on the Plan by the trial court is its value on the date the dissolution was filed, and concedes that the proper value is $122,581.13, its value at the time of trial. *Giedinghagen v. Giedinghagen*, 712 S.W.2d 711 (Mo.App.1986). *See also Taylor v. Taylor*, 736 S.W.2d 388 (Mo. banc 1987). The difference between the two valuations is $18,445.13. The trial court divided the marital property on an equal basis.[4] We, therefore, reverse the trial court's decision as to the valuation and division of the Keough Plan and remand with directions to value the Plan at $122,-581.13, to increase Mrs. Graham's share by $9,222.57 and to increase Dr. Graham's share by $9,222.56.

Mrs. Graham next argues that the trial court erred in valuing certain investment property owned by the Grahams. There is sufficient evidence in the record to support the trial court's valuation of the property. Mrs. Graham presents no basis for our disturbing it. *Dardick*, 670 S.W.2d at 868. The point is denied.

Finally, Mrs. Graham urges that the trial court abused its discretion in failing to award her attorney's fees and costs, given her husband's far greater financial resources. Section 452.355, RSMo 1986, allows the trial court to award attorney's fees and costs after considering "all relevant factors including the financial resources of both parties...." Given the division of property fashioned by the trial court and the assets devoted to Mrs. Graham, we cannot say that an abuse of discretion is present in this case. The point is denied.

The judgment of the Circuit Court of Cole County in *Graham v. Graham* is reversed as to the valuation of the Keough Plan and remanded with directions to increase Mrs. Graham's share by $9,222.57 and to increase Dr. Graham's share by $9,222.56.

In this case of first impression, we have recognized goodwill in a professional practice as property subject to division in a dissolution of marriage proceeding. We have also approved a limited means of proving and valuing that goodwill in a professional context.

In both cases, the trial courts heard evidence of the fair market value of the practice in the relevant geographic and professional market. This evidence was, in each case, presented by the professional spouses. On the evidence before it, the trial court in *Graham* properly found no goodwill value in the practice. Under different circumstances, we would affirm the trial court in *Graham*.

Given the nature of our decision, however, our sense of justice dictates that we allow the nonprofessional spouses in each case an opportunity to present fair market value evidence of goodwill value in this practice.

The judgments of the circuit courts in *Graham v. Graham* and *Hanson v. Hanson* are reversed and remanded for proceedings consistent with this opinion.

BILLINGS, C.J., BLACKMAR, DONNELLY, RENDLEN, HIGGINS, JJ. and PREWITT, Special Judge, concur.

WELLIVER, J., not sitting.

---

4. The entire corpus of the marital property was divided on an equal basis. In order to achieve that result, the Keough Plan assets were divided somewhat unequally.