In re MARRIAGE OF BROOKS.

William Paul BROOKS,
Petitioner–Appellant,

v.

Rose Marie BROOKS,
Respondent–Respondent.

No. 14454.

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 9, 1987.

Harold A. Kyser, Butler, for petitioner-appellant.

George R. Lilleston, Clinton, for respondent-respondent.

HOGAN, Judge.

This is a proceeding for dissolution of a marriage of 21 years. The only issue tendered is whether a family business was properly valued by the trial court as an asset subject to distribution as marital property under the provisions of § 452.330,

1. References to statutes and rules are to RSMo 1986 and Missouri Rules of Court (15th ed.

RSMo 1986.[1] The cause was argued and submitted to this court at its regular September 1986 Session at Springfield. Because the appeal involves valuation and distribution of that intangible asset called "goodwill" as marital property and because we were aware that consideration of goodwill as an intangible asset subject to distribution as marital property had been undertaken by our Supreme Court, we deferred adjudication of this case. With the filing of *Hanson v. Hanson, Graham v. Graham* (consolidated), 738 S.W.2d 429 (Mo. banc 1987), and *Taylor v. Taylor,* 736 S.W.2d 388 (Mo. banc 1987), we have the benefit of our Supreme Court's guidance, even though the court did not make its decisions retroactive. *Hanson* decided, primarily, that the goodwill of a professional practice is a marital asset subject to division in dissolution proceedings. Further, *Hanson* reaffirmed that goodwill is property in the following language:

"Is goodwill property? Our courts have long recognized that 'the good will of a business is property....' *Sessinghaus Milling Co. v. Hanebrink,* 247 Mo. 212, 152 S.W. 354, 357 (Mo.1912); *Montgomery v. Getty,* 284 S.W.2d 313 (Mo.App.1955); *Magee v. Pope,* [234 Mo. App. 191], 112 S.W.2d 891, 899 (Mo.App. 1938); *Kreger Glass Co. v. Kreger,* 49 S.W.2d 260 (Mo.App.1932). Goodwill produced in a professional setting is no less property than that arising from a commercial setting.

Accounting texts define goodwill as 'an economic advantage which exists when the total value of a business is more than the value of its identifiable assets. This economic advantage arises because the expected earnings of the business exceed the level of earnings on only its identifiable assets....' Welsch, Zlatkovich, and Harrison, Intermediate Accounting, 438 (6th ed. 1982). '[It] is an intangible asset that attaches to a business as a result of such favorable factors as location, product superiority, reputation, and managerial skill....' Niswon-

1985), except where otherwise indicated.

ger and Fess, Accounting Principles, 257 (12th ed. 1977).

Courts have defined goodwill as 'nothing more than the probability, that the old customers will resort to the old place.' *Cruttwell v. Lye,* 17 Ves. 335, 346, 34 Eng.Rep. 129, 134 (Ch. 1810). 'Men will pay for any privilege that gives a reasonable expectancy of preference in the race of competition. Such expectancy may come from succession in a place or name or otherwise to a business that has won the favor of its customers.' *In re Brown,* 242 N.Y. 1, 6, 150 N.E. 581, 582 (1926).

The common theme in all of these definitions is that the goodwill which can be sold, and is therefore property, attaches not to an individual but to a business entity. Goodwill has no separate existence; it has value only as an incident of a continuing business."

*Hanson,* 738 S.W.2d at 433[3].

The court's opinion was focussed upon the goodwill of a professional practice acquired during marriage. In valuing such goodwill as marital property, the court stated its strong preference for fair market valuation both as evidence of the existence of goodwill and of its true value, and rejected capitalization formulae because of: a) the speculative nature of such formulae in a professional context; b) the tendency of such formulae to place a present value on the future earning capacity of the individual professional, and c) because of the " 'disturbing equity in compelling a professional practitioner to pay a spouse a share of intangible assets at a judicially determined value that could not be realized by a sale or another method of liquidating value.' [Citation omitted.]" *See Taylor,* 736 S.W.2d at 390.

Nevertheless, we do not read *Hanson, Graham* and *Taylor* as rejecting all capitalization formulae as methods of valuing goodwill as an intangible asset of a commercial corporation or other business organization, no matter the nature of the business involved.[2] We undertake no gloss on the *Hanson* and *Graham* opinions, but there is apparently no end to the types of business enterprise which have been recognized as marital assets under the provisions of the Uniform Marriage and Divorce Act, 9A U.L.A., p. 156 (1987).[3] Manifestly no single method of valuing a business as a marital asset can be made applicable to every case, nor to the goodwill incident to that business, except where a professional practice is concerned.

Turning to the case at hand, the most remarkable characteristic of the marriage was its material success. At the time the parties were married, the petitioner (plain-

---

**2.** In *Hanson,* 738 S.W.2d at 436, n. 2, the court observed: "We recognize that evidence of the fair market value of the goodwill of an entity may reveal that such value is the product of the application of a capitalization rate to the gross receipts or net income of the entity. To the extent that fair market value as shown by the evidence includes such a product, we obviously do not reject it."

**3.** *In Re Marriage of White,* 98 Ill.App.3d 380, 53 Ill.Dec. 786, 424 N.E.2d 421, 422–23 (1981), the court blandly remarked: " ... as a general matter, business interests, such as a sole proprietorship or stock in a closed corporation, which are acquired subsequent to the marriage are regarded as marital property...." A superficial glance at the precedents suggests the infinite variety of businesses which have been recognized as "marital property." In *Turgeon v. Turgeon,* 190 Conn. 269, 460 A.2d 1260 (1983), the court recognized a machine shop as marital property; the court approved what it called a "capitalization of actual income" as an appropriate method of valuation. In *Johnson v. Johnson,* 277 N.W.2d 208 (Minn.1979), the court recognized a marital joint venture in buying, selling and developing real property as a marital asset and held that valuation was to be approached in the same manner as valuation of a withdrawing partner's interest. In *Rogers v. Rogers,* 296 N.W.2d 849 (Minn.1980), an engineering services company organized as a Subchapter S corporation was recognized as marital property; the court held that a buy-sell agreement, with some modification, would furnish the best guide to the value of the asset. In *Bowen v. Bowen,* 96 N.J. 36, 473 A.2d 73, 56 A.L.R.4th 847 (1984), the court recognized a plastics manufacturing plant, organized as a closely held corporation, as a marital asset. The court noted the difficulties inherent in valuation of closely held corporations, suggesting the court might employ its own expert to resolve disagreement between the parties' experts. In *Dean v. Dean,* 87 Wis.2d 854, 275 N.W.2d 902 (1979), a corporate beer distributorship was regarded as a marital asset requiring valuation.

tiff) was 20 years of age, the respondent (defendant) 21. Both parties were employed by Western Electric in Kansas City. Plaintiff was employed as a tool and die maker; the defendant was employed as a production worker. The parties lived at Adrian, in Bates County, and commuted to work.

The family business began as a hobby. Plaintiff testified that he "ran machines at work and ... enjoyed it and ... actually started [the business] just as a hobby." Plaintiff bought a lathe, put it in his garage and started turning out machinery spare parts for Remington Arms. In 1966 plaintiff terminated his employment at Western Electric to work full time at home. By that time, plaintiff's original lathe had become a machine shop. The defendant did not, according to the plaintiff, work in the shop "doing production" but did some of the "book work." The defendant's version of the facts was that she was active in the management of the business; she did the clerical work, looked after the payroll, maintained the inventory, and kept the records in order. The trial court could readily have found that the machine shop was a family-owned, family-operated business.

The plaintiff wanted to expand, but found that commercial property was very expensive. Through the efforts of one Buerge, a banker at Butler, Missouri, the plaintiff obtained a favorable ground lease from the local airport commission and an S.B.A. loan through Buerge's bank. The proceeds of the loan were used to finish paying for the business in Adrian, to construct a building to house the new business, and as operating capital. From that time—June or July of 1968—the business was operated as the Brooks Machine and Tooling Company. Although one witness referred to a "corporate" bank account, it does not appear that the business was ever incorporated.

The precise nature of the work done by the Brooks Machine and Tooling Company is not clear. The business appears to be—and is referred to—as a "machine shop," albeit a very elaborate one. By the time

the dissolution and distribution of property was undertaken, Brooks had machinery and tools of the value of $82,670 on hand, and accounts receivable in the amount of $12,000 due.

For the 5 years preceding dissolution, Brooks had a net income as follows:

| 1980 | $128,797 |
| 1981 | $132,460 |
| 1982 | $172,575 |
| 1983 | $ 97,621 |
| 1984 | $160,174 |

It is also quite clear that the parties lived well on the earnings of the Brooks Company. The defendant's evidence was that in 1982, the parties transferred $138,325 from the business to their personal account; in 1983, deposits to their personal account from Brooks were $106,150; in 1984, $156,200 was taken from the business as personal income, and in the first 6 months of 1985, $55,350 was transferred from the business to the parties' personal bank account.

The parties also acquired a great deal of other property, including farmland and a herd of Simmental cattle, originally intended as a tax shelter. They also acquired a great many substantial debts. It is not necessary to consider the conflicting evidence of the value of the whole marital estate at length. On the basis of all the evidence, the trial court found the value of the marital estate to be $1,311,785, subject to various debts and charges amounting to $515,288. A schedule of the assets and debts, as found by the trial court, is attached as Schedule "A." In distributing the marital property, the trial court awarded the defendant two automobiles; all household and personal items in her possession at the time of trial; a life insurance policy, and $300,000 (the value of her interest in Brooks Machine and Tooling Company) to be paid in monthly installments of at least $2,500 beginning September 1, 1985, until the entire sum is paid in full.

The scope of our review is narrow. It has often been held that we are required by the rules to limit our review to the points properly briefed, and this rule is applicable to court-tried cases as well as cases tried to a jury. *State ex rel. Plymesser v. Cleaveland,* 387 S.W.2d 556, 558[2] (Mo.1965); *Smith v. Welch,* 611 S.W.2d 398, 399[1] (Mo.App.1981); *Kurtz v. Fischer,* 600 S.W. 2d 642, 645[1] (Mo.App.1980). Plaintiff's sole point on appeal, as stated, is that "[t]he trial court erred in finding the value of the business to be $481,750.00 in that such amount was based upon conjecture and speculation and did not take into account inventory, equipment, work in process, cash reserves, or debt on contracts." We are cited to *Boling v. Boling,* 683 S.W. 2d 661 (Mo.App.1984); *Oldfield v. Oldfield,* 666 S.W.2d 17 (Mo.App.1984), and *Moseley v. Moseley,* 642 S.W.2d 953 (Mo.App.1982). The plaintiff does not contend that the Brooks Machine and Tooling Company was not marital property; his sole contention is that the business was improperly valued, and he focuses his argument on the goodwill assigned to the Brooks Company.

The authorities cited by the plaintiff do not, in our view, aid his position. In *Boling v. Boling,* 683 S.W.2d 661, the court rejected a net-worth or net-value valuation because there was no balance sheet evidence, asset statements or other evidence from which the court could determine all of the assets and liabilities of the business being valued. It also rejected a capitalization of income approach because the wife, who relied on that theory of valuation, offered no evidence of the valuation of the equipment, the balances due on the loans, nor on any other assets or liabilities of the corporation. There was evidence that the books of account were intentionally not kept in good order. Such is not the case here; if anything, a plethora of records was presented and considered. *Oldfield v. Oldfield,* 666 S.W.2d 17, is factually so dissimilar to the present case that it is not controlling authority. As much can be said of *Moseley v. Moseley,* 642 S.W.2d 953.

The value of Brooks Machine and Tooling Company, as shown on Schedule "A" consists of 5 items: 1) Machinery and tools; 2) inventory; 3) a bank account in the First National Bank of Butler; 4) work in progress, and 5) goodwill. The plaintiff is in no position to complain of the value placed on the tangible assets of the Brooks Machine and Tooling Company. As the trial court observed in its findings of fact and conclusions of law, the plaintiff had valued the business at $500,000 on a 1981 financial statement (Respondent's Exhibit N); at $630,000 in 1983 (Respondent's Exhibit M), and at $630,000 on a 1984 financial statement (Respondent's Exhibit L). Such statements constitute a species of admission against interest. *Manlin v. Manlin,* 638 S.W.2d 295, 296 (Mo.App.1982).

What is questioned on this appeal is the value assigned to goodwill. *Hanson*—and the related cases we have noted very briefly—defined goodwill as an intangible asset in the context of a professional practice. By contrast, commercial goodwill has been defined as:

> "an element which inheres in [a going business] and cannot be separated from the whole. [Citation omitted.] There are many elements ... which comprise good will. Among these are continuity of name, location, reputation for honesty and fair dealing, individual talents and ability of the members of the going business organization, and many others. [Citation omitted.] Good will is an intangible element that inheres in the value of a going business."

*In re Glant's Estate,* 57 Wash.2d 309, 356 P.2d 707, 709[3] (1960).[4] The usual, if not very helpful comment of courts, when confronted with questions concerning goodwill is that the term is difficult to define. We agree, but this opinion is not intended as a definitive essay, and the only real question before us is whether the goodwill of Brooks Machine and Tooling Company was properly valued.

---

**4.** *See also* Comment, The Recognition and Valuation of Professional Goodwill in the Marital Estate, 66 Marquette L.Rev. 697, 702 (1983), wherein a distinction is drawn between the commercial goodwill of a manufacturing corporation and professional goodwill.

The record indicates that the defendant's expert used a variation of the capitalization of excess earnings method of valuing goodwill.[5] The defendant's computation appears in the record as her Exhibit SS. Defendant's expert, John Daniel, was a certified public accountant. Daniel examined the books and records of Brooks Machine and Tooling Company on three occasions between May 26 and July 15, 1985. Daniel testified affirmatively that he had access to all the books and records necessary to prepare "an evaluation of the business based upon the earnings of the business."

Daniel determined the average net earnings of Brooks Tool and Machine Company for the years 1982, 1983 and 1984 from federal income tax returns. In 1982, Brooks' income from operations was $172,575; net earnings adjusted for salary and expenses were $125,438. In 1983, the company's income from operations was $97,621; net earnings adjusted for salary and expenses were $57,759. In 1984, income from operations was $160,174; adjusted for salary and expenses, it was $105,853. The net income for the years 1982, 1983 and 1984 was then averaged out and capitalized on a 20 percent basis, including a salary of $96,350 for a managing operator. These calculations, including a "risk factor" taken into account, produced the goodwill figure of $481,750 included in the trial court's findings. We do not hold ourselves out as accountants; nevertheless the method of calculating the value of the goodwill assigned to Brooks Machine and Tooling Company appears to be a method approved by accountants and accepted, for the most part, by the courts.[6] We cannot say that the value of the goodwill accepted by the trial court is the product of conjecture and speculation, as the plaintiff contends.

The plaintiff also argues that Brooks' income was largely dependent upon the continued patronage of one customer, and that the record contains no assurance that that customer would continue to deal with Brooks Machine. There was, however, testimony from the defendant and her expert that Brooks could reasonably expect to continue doing business with Foley–Belsaw, its principal customer. Mr. Daniel based his testimony on an examination of Brooks' purchase orders over a period of several years. The defendant testified that she expected Brooks' sales to Foley–Belsaw to continue. We cannot say that the trial court erred in concluding that Brooks' potential to produce income had not been adversely affected by the failure of one customer to renew contracts which had been renewed only sporadically and irregularly in the past.

Very indirectly, the plaintiff complains of the trial court's division of the property, which we disturb only where it is improper, or where an abuse of discretion is shown. *Hanson v. Hanson,* 738 S.W.2d 429; *Dardick v. Dardick,* 670 S.W.2d 865, 868 (Mo. banc 1984), 51 A.L.R.4th 1 (1984). The plaintiff is not specific, except to say he cannot pay the $2,500 monthly payment required by the decree. Given the earnings record of the Brooks Machine and Tooling Company and the assets assigned to the plaintiff which may be orderly liquidated, we cannot say the trial court's order imposes an unconscionable burden on the plaintiff.

To synopsize, limit and possibly clarify our opinion, we consider that in *Hanson v. Hanson* and *Graham v. Graham,* 738 S.W. 2d 429, our Supreme Court held that the goodwill of a commercial or professional corporation is an intangible asset susceptible of division under the provisions of § 452.330, if it may properly be classified as marital property within the intent of § 452.330.2; that *Hanson* also held the goodwill of a professional corporation is peculiar to organizations of that order, and

---

**5.** A discussion of the methods of valuation of goodwill is beyond the scope of this opinion. The "capitalization of excess earnings method" of valuation is discussed in the comment, *supra,* 66 Marquette L.Rev. at 717–20. Generally, *see* 2 J. McCahey, Valuation and Distribution of Marital Property § 23.04[2] (1987); L. Golden, Equitable Distribution of Property, Chapter 7 (1983).

**6.** *See Miranda v. Miranda,* 596 S.W.2d 61 (Mo. App.1980); 2 J. McCahey, *supra,* n. 5 at § 23.04[2].

its value should be determined by ascertaining the price the professional practice would bring were it sold on the open, relevant market to a qualified professional. We do not understand that our Supreme Court necessarily rejected all other methods of valuing goodwill if the corporation or other business entity is a commercial business enterprise.

As far as the appeal at hand is concerned, we find the computation of the value of the goodwill of the Brooks Machine and Tooling Company is reasonable in light of all the evidence and the division of property is within the bounds of a reasonable judicial discretion. Accordingly, the judgment is in all respects affirmed.

PREWITT, P.J., and FLANIGAN and MAUS, JJ., concur.

## SCHEDULE A
### ASSETS

| | | |
|---|---|---:|
| Tract One: | A tract bounded and described as follows: Commencing at the NW corner of Section 17, Township 40, Range 31, and running thence South 881', thence East 1301.3' to public road, thence North 881', thence West to the point of beginning, all in Bates County, Missouri ... 26⅔ acres more or less. | $ 130,000.00 |
| Tract Two: | NW 1/4 of SE 1/4, and N 1/2 of Lot 1 of SW 1/4 (otherwise described as the NE 1/4 of SW 1/4), all in Section 7, Township 40, Range 31, Bates Co., Mo., containing 80 acres, more or less. | 20,000.00 |
| Tract Three: | S 1/2 of SE 1/4 of Section 7, and N 1/2 of NE 1/4 of NE 1/4; the W. 30' of SE 1/4 of NE 1/4 and the W 30' of S 1/2 of NE 1/4 of NE 1/4; The NW 1/4 of NE 1/4 and the N. 10 Acres of SW 1/4 of NE 1/4 of Section 18, Township 40, Range 31, Bates County, Mo., containing 151 Acres, more or less. | 60,000.00 |
| Tract Four: | S 1/2 of SW 1/4 of Section 2, Enc. 1 acre in SE corner for school; SW 1/4 of SE 1/4 of Section 2; The E. 3/4ths of Section 11, Exc. SE 1/4 of SE 1/4; All in Township 40, Range 32, exc. parts conveyed for highway purposes, containing 560 acres more or less. | 212,000.00 |
| 1928 Ford Roadster—increase in value | | 1,350.00 |
| Federal Land Bank Stock | | 10,700.00 |
| 1st National Bank of Butler, Mo | | |
| Savings acct. | | 325.37 |
| Checking acct. | | 1,768.64 |
| Horses—2 | | 500.00 |

## SCHEDULE A
### ASSETS

| | |
|---|---:|
| Motorcycles | |
| 1974 H–D Superglide | |
| 1971 H–D Sporster [sic] | 3,200.00 |
| Household goods | |
| Respondent's possession | 10,000.00 |
| Petitioner's possession | 2,000.00 |
| Farm Machinery and Equipment | 46,900.00 |
| Motor Vehicles | |
| 1983 Ford Pickup Truck | 6,500.00 |
| 1983 Chevrolet Pickup Truck | 6,000.00 |
| 1980 Datsun Auto | 3,000.00 |
| 1979 Lincoln Auto | 5,450.00 |
| 1970 G.M.C. 2 ton Truck | 2,000.00 |
| Cattle | |
| 85 Cows $ $700 each | 59,500.00 |
| 52 Cow/Calf units $ $1,000 each | 52,000.00 |
| 5 Bulls | 8,000.00 |
| Brooks Machine & Tooling Company | |
| Machinery and Tools | 82,670.00 |
| Inventory | 20,000.00 |
| Bank Acct.—1st Nat'l Bank of Butler, Mo | 25,572.06 |
| Work in Progress | 22,000.00 |
| Goodwill | 481,750.00 |
| Investment Credit Carryover | 7,705.00 |
| Growing Crops | |
| 45 acres Milo | 2,500.00 |
| 1/3 of 70 Acres Soybeans | 2,150.00 |
| Stored Crops | |
| Oats/Milo | 500.00 |
| Lawn Mowers | |
| Dixon | 2,500.00 |
| Wheelhorse | 1,000.00 |
| Drill Press in Tract One—basement | 200.00 |
| Guns | |
| .22 Rifle | |
| 30–06 Enfield Rifle | |
| Winchester Model 1200 | |
| Hi–Standard Flight King | |
| Savage 340 | |
| .357 Pistol | |
| 30.30 Rifle | |
| Winchester 30–30 | 1,355.00 |
| Cash surrender value of Life Insurance Policies on Petitioner | 16,489.76 |
| Account Receivable—Bradley Brooks | 4,200.00 |
| **TOTAL** | **$1,311,785.83** |
| **DEBTS** | |
| Federal Land Bank | $ 201,925.92 |
| Zellmer Note | 44,348.00 |
| Heinsen Note | 15,425.00 |
| 1st State Savings | 22,572.00 |
| Ford Motor Credit Corp. | 5,554.00 |
| 1st National Bank of Butler, Mo. | |
| Farm Equipment/Cattle | 64,500.00 |
| GNC | 28,916.30 |
| 7–6–84 | 70,000.00 |
| 2–16–85 | 10,000.00 |
| FLB—Interest due | 11,572.68 |
| Empire Gas | 793.81 |
| Butler Animal Clinic | 1,495.12 |
| Barr Ford | 492.34 |
| Heiman Agri–Serv. | 4,493.45 |
| M.F.A. | 11.20 |
| Ours Oil Co. | 913.35 |
| Bob & Glen's Implement | 37.21 |
| Daniel's Plumbing | 146.55 |
| Industrial Spring | 625.94 |
| Community Lumber | 23.61 |
| Miller Florist | 25.17 |
| Everett Auto Parts | 289.29 |
| Bosco Fastening Serv. Center | 98.50 |
| Bossert Co. | 39.64 |
| Central Co-op | 27.93 |
| Congress Drives | 1,760.00 |
| Custom Aluminum | 15,007.68 |

SCHEDULE A
DEBTS

| | |
|---|---|
| Dempsey Foundry | 1,792.88 |
| Detray Plating | 628.40 |
| Ed's Welding | 36.81 |
| Grainger | 290.25 |
| Jorgensen | 1,350.99 |
| Metal–Rich Ind. | 7,010.05 |
| Richards & Conover | 2,901.84 |
| Power Flow | 63.12 |
| United Telephone | 119.54 |
| TOTAL | $ 515,288.57 |