**Millie J. GERARD, Respondent,**

v.

**Joseph H. GERARD, Appellant.**

**No. WD 44975.**

Missouri Court of Appeals, Western District.

Feb. 11, 1992.

**22**

Gary Oxenhandler, Columbia, for appellant.

Lori J. Levine, Jefferson City, for respondent.

Before LOWENSTEIN, P.J., and SHANGLER and SMART, JJ.

SMART, Judge.

Joseph H. Gerard appeals from the dissolution decree's property distribution order which valued Millie Gerard's Certified Public Accounting (CPA) practice at $8,297.00. There is no dispute that the value of the tangible assets and receivables, less indebtedness, is $8,297.00. The only question on appeal is whether the practice should be valued at a greater dollar amount. Mr. Gerard contends that the trial court erred in failing to include in its valuation an element of good will.

The judgment is affirmed.

Mrs. Gerard has maintained a sole proprietorship CPA practice in Jefferson City, Missouri, since 1973. She employs two full-time office employees. Mrs. Gerard's average annual gross revenue was between $133,000.00 and $140,000.00 at the time of trial and her net before-tax income amounted to approximately $60,000.00 a year. The trial court found that Mrs. Gerard's CPA practice had a value of $8,297.00, which represented the "value of all of the practice's assets, the office equipment and accounts receivables, less the debt thereon." Mr. Gerard appeals from this order.

Mr. Gerard presented the testimony of Wallace James Beck, Jr., a CPA, as to the value of Mrs. Gerard's business. Mr. Beck stated that his firm had purchased three CPA practices in Columbia. The purchase price in each case had, he said, included an element of good will. He further testified that in his opinion Jefferson City and Columbia were within the same relevant geographic and professional market. He based this opinion on the fact that Jefferson City and Columbia are in the same chapter of Missouri Society of CPA's. He also noted that CPA fees in the two cities were similar. Both cities were county seats in second class counties, and they shared the same airport. He testified that in each of the sales of the solo CPA practices in Columbia, the buyer had obtained a covenant not to compete within 50 miles of Boone County. Concluding that there was a significant element of good will in Mrs. Gerard's practice, Mr. Beck valued the practice between $93,463.00 and $99,932.00.

In contrast, Mrs. Gerard's position was that her practice had no value beyond the equipment and accounts receivable. Mrs. Gerard also presented expert testimony by accountants Elmer Evers and Harry Otto to support her testimony. These witnesses opined that Jefferson City and Columbia were not within the same relevant geographic and professional market. They further maintained that a solo CPA practice is not marketable in Jefferson City without a covenant not to compete[1]. They specifically noted that there had been no sales of solo CPA practices in Jefferson City in the eight or nine years prior to trial. Mr. Evers and Mr. Otto concluded that Mrs. Gerard's CPA practice was worth only the net value of her hard assets and receivables.

Mr. Gerard argues that the weight of the evidence establishes that Columbia and Jefferson City are in the same relevant geographic and professional market, and that therefore the evidence of the Columbia sales involving good will required a finding of good will value in this case.

---

1. Appellant does not argue that evidence of value attributed to a covenant not to compete should be a component of good will. Since there is no evidence that Mrs. Gerard intends to give up practicing in Jefferson City, it would not seem appropriate to postulate some value for a non-competition agreement. In any event, it has been held that a covenant not to compete should not be included in the valuation of good will. *Johnston v. Johnston*, 778 S.W.2d 674, 677 (Mo.App.1989) (refusing to consider a covenant not to compete as a factor in good will).

This court will affirm the trial court's decision in a court tried case unless the record indicates that there is not substantial and competent evidence to support the judge's findings, the decision is clearly contrary to the weight of the evidence, or the trial court erroneously declared or applied the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The evidence, and any legitimate inferences from such evidence, must be viewed in the light most favorable to the trial court's decision. *King v. King*, 793 S.W.2d 200, 202 (Mo. App.1990). All evidence contrary to the decision will be disregarded. *Id.* This court may not substitute its judgment for that of the trial court's, and great deference must be given to the trial court's resolution of conflicts in evidence. *Id.* "Additionally, the trial court is given deference even if the evidence could support a different conclusion." *Id.*

■ Good will in a professional practice has been defined as "the value of the practice which exceeds its tangible assets and which is the result of the tendency of clients/patients to return to and recommend the practice irrespective of the reputation of the individual practitioner." *Hanson v. Hanson*, 738 S.W.2d 429, 434 (Mo. banc 1987). It has been decided that the good will of a professional practice is to be classified as a marital asset which is subject to division in marital dissolution proceedings. *Id.*

The Missouri Supreme Court in *Hanson* defined the standard for determining the existence of good will. *Id.* at 435. The court stated that good will can be awarded only when "there is evidence of a recent actual sale of a similarly situated professional practice, an offer to purchase such practice, or expert testimony and testimony of members of the subject profession as to the existence of good will in a similar practice in the relevant geographic and professional market." *Id.* at 435. This valuation of good will is known as the fair market value approach. *Id.* at 435–36. This inquiry focuses on the price the practice would bring if it were sold on the open, relevant market to a qualified professional.

*Id.* This fair market value formula is the best approach to circumvent the unfairness of forcing a professional practitioner to pay a spouse the judicially created value for intangible assets that could not be yielded by any liquidating method. *Id.* at 436.

It should be noted also, as mentioned in *Hanson*, 738 S.W.2d at 435, that good will is more likely to exist in larger professional practices than in the offices of solo practitioners. This is so because reliance by clients on the reputation and skill of the individual practitioner is, in most cases, inversely related to the number of practitioners in the practice. Of course, good will may be found to exist in a solo practice, but there must be substantial and competent evidence of such element. *Id.*

The trial court was not required to believe Mr. Gerard's expert, who considered Columbia and Jefferson City to be within the same relevant geographic market, but could easily believe the expert testimony of Mrs. Gerard's experts. It was acknowledged by both sides that there were no sales of solo CPA practices in Jefferson City in recent years. Mrs. Gerard's experts testified that Columbia and Jefferson City are not within the same geographic and professional market and, therefore, the sales of solo CPA practices in Columbia were not germane. The fact that sales of solo CPA practices had occurred in Columbia, but not in Jefferson City, might itself be an indication that these cities were not within the same market. The experts further based their determination of the relevant market on population differences, geographic location, and the existence of a higher percentage of government employees in Jefferson City willing to "moonlight" as public accountants.

The determination of the scope of the relevant geographic and professional market is necessarily a fact issue. The relevant market for the sale of a CPA practice will not necessarily be the same as for the sale of other types of professional practices. The scope of the market is an issue the trial judge could have resolved either way.

Furthermore, in this case, even if the trial court had believed that the relevant

**24**

geographic and professional market had included Columbia, the court might not have been persuaded that the Columbia sales really involved "good will" within the meaning of the *Hanson* case as understood in the light of *Johnston v. Johnston*, 778 S.W.2d 674 (Mo.App.1989). Each of the Columbia sales included a covenant not to compete, and in each instance there was no specific evidence as to what the sale price would have been in the absence of a covenant not to compete, or even whether there would have been a sale in the absence of such a covenant. Thus, there may not have been any real evidence of "good will" in the Columbia sales under the *Johnston* rule.

The trial court in this case correctly followed the standard set forth in *Hanson, supra*. The determination of the trial court that the value of the business included only the net value of the tangible assets and receivables was a factual determination supported by substantial and competent evidence. The judgment is affirmed.

All concur.